**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

THE ESTATE OF SCOTT W.
THOMPSON, by the Personal
Representatives, RANDY W.
THOMPSON and VICKY J.
THOMPSON, and RANDY W.
THOMPSON and VICKY J.
THOMPSON, Individually,

          Plaintiffs,

vs.

KAWASAKI HEAVY INDUSTRIES,
LTD., and KAWASAKI MOTORS
CORP., U.S.A.,

          Defendants.

No. C 11-4026-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THE PARTIES'
PRETRIAL MOTIONS**

**(FILED UNDER SEAL)**

---

**TABLE OF CONTENTS**

**I. INTRODUCTION** ......................................................................... 3
   *A. Factual Background* ............................................................ 3
   *B. Procedural Background* ...................................................... 6

**II. LEGAL ANALYSIS** ................................................................ 10
   *A. Standards For Pretrial Evidentiary Challenges* ............................ 10
      *1. Rule 104 And Preliminary Questions Of Admissibility* ............ 10
      *2. Relevance and prejudice standards* .................................... 10
      *3. Hearsay and exceptions* ................................................. 13
   *B. Kawasaki's Pretrial Motions* .............................................. 14
      *1. Exclusion of hearsay statements and lay opinions of*
         *Mr. Lachioma* ............................................................. 14
         *a. Testimony about what Mr. Welter said* ...................... 15
            *i. Arguments of the parties* ............................... 15
            *ii. Analysis* ................................................... 15
         *b. Testimony about how the accident occurred* ................ 19

          *i.*    *Arguments of the parties* ................................. *19*

          *ii.*   *Analysis*.................................................... *21*

      *c.*   *Testimony about statements from internet fora or "enthusiast publications"*.................................... *24*

          *i.*    *Arguments of the parties* ................................. *24*

          *ii.*   *Analysis*.................................................... *25*

  *2.*   *Exclusion of hearsay testimony of Randy Thompson* ............. *28*

      *a.*   *Arguments of the parties* ................................. *28*

      *b.*   *Analysis* .......................................................... *29*

  *3.*   *Motion to bifurcate proceedings*.................................. *33*

      *a.*   *Arguments of the parties* ................................. *34*

      *b.*   *Analysis* .......................................................... *35*

  *4.*   *Exclusion of similar incidents evidence*............................ *37*

      *a.*   *Arguments of the parties* ................................. *37*

      *b.*   *Analysis* .......................................................... *39*

  *5.*   *Exclusion of causation opinions of the plaintiffs' expert*......... *41*

      *a.*   *Arguments of the parties* ................................. *41*

      *b.*   *Analysis* .......................................................... *43*

*C.*   *The Thompsons' Motion To Exclude Evidence*............................ *46*

  *1.*   *Evidence no longer in dispute* ....................................... *47*

  *2.*   *Evidence still in dispute* ............................................... *47*

      *a.*   *Evidence of the lack of other claims and "wobble/weave" incidents* ...................................... *47*

          *i.*    *Arguments of the parties* ................................. *47*

          *ii.*   *Analysis*.................................................... *48*

      *b.*   *Evidence that Scott Thompson caused his death or failed to mitigate his damages* ................................. *51*

          *i.*    *Arguments of the parties* ................................. *51*

          *ii.*   *Analysis*.................................................... *52*

      *c.*   *Evidence of emergency responders' opinions about causation*............................................................ *53*

          *i.*    *Arguments of the parties* ................................. *53*

          *ii.*   *Analysis*.................................................... *54*

      *d.*   *Evidence that Scott Thompson was speeding* ............... *55*

          *i.*    *Arguments of the parties* ................................. *55*

          *ii.*   *Analysis*.................................................... *56*

      *e.*   *Compliance with or absence of safety standards*........... *57*

          *i.*    *Argument of the parties* ................................. *57*

          *ii.*   *Analysis*.................................................... *58*

    *f.*   **Evidence of collateral source benefits**....................... 59
       *i.*    *Arguments of the parties* ............................. 59
       *ii.*   *Analysis*.................................................... 60
    *g.*   **Evidence of adverse Daubert *rulings*** ....................... 61
       *i.*    *Arguments of the parties* ............................. 61
       *ii.*   *Analysis*.................................................... 61
***III.***   ***CONCLUSION*** ............................................................... 63

In this diversity action under Iowa products liability law, arising from a motorcycle accident, the plaintiffs asserted design defect and manufacturing defect claims against the motorcycle manufacturer and the manufacturer of an adjustable steering damper incorporated into the motorcycle's steering mechanism. I granted summary judgment in favor of the defendants on the manufacturing defect claim and dismissed all claims against the steering damper manufacturer. Thus, this matter is proceeding to trial only on the plaintiffs' design defect claim against the motorcycle manufacturer. All parties still in the action at the deadline for pretrial motions filed such motions, which I must now resolve.

## *I.*   *INTRODUCTION*

### *A.*   *Factual Background*

As I explained in my recent summary judgment ruling, *see* February 11, 2013, Memorandum Opinion And Order Regarding Defendants' Motions For Summary Judgment (docket no. 99), *published at Thompson v. Kawasaki Heavy Indus., Ltd.*, ___

F. Supp. 2d ___, 2013 WL 494453 (N.D. Iowa Feb. 11, 2013), at about sunset on March 21, 2009, Scott Thompson was riding his 2007 Kawasaki Ninja ZX-10R motorcycle in a convoy with two friends on county road K-22 in Plymouth County, Iowa. One of Thompson's friends, Dave Lachioma, who was also riding a 2007 Ninja motorcycle, led the convoy, the other friend, Michael Welter, followed in his car, and Thompson brought up the rear on his motorcycle. While driving northbound on K-22, Thompson passed Welter, who was driving at 60 to 65 mph. A few seconds after Thompson passed him, Welter observed the taillight of Thompson's motorcycle wobble from side to side. Although Welter observed that it looked like Thompson was regaining control of his motorcycle, Thompson was tossed from the motorcycle, slid on his back, feet first, across the highway, and landed in a ditch on the west side of the highway. The motorcycle continued upright in the northbound lane for another several hundred feet, before exiting the highway on the east side. As a result of the accident, Thompson suffered a burst fracture at the T3-T4 vertebrae, causing paralysis below that level. Thompson died on December 25, 2011.

Turning to essential background on motorcycle performance, "kickback" occurs when there is a disturbance to the motorcycle, such as a gap in the pavement might cause, that creates handlebar vibrations. "Convergence" occurs when kickback decreases and disappears as the motorcycle continues to run. In contrast, "expansion" occurs when kickback continues to increase as the motorcycle continues to run. Kickback expansion, in turn, can turn into "wobble" of the motorcycle, but if kickback convergence occurs within an acceptable time frame, "wobble" is avoided. Wobble can make it difficult for a rider to control the motorcycle.

The parties agree that a "steering damper" is a device with which a motorcycle can be equipped for the purpose of minimizing kickback and bringing about faster convergence—indeed, in litigation of the defendants' summary judgment motions,

Kawasaki expressly conceded that a steering damper is a "safety device" for that purpose. In general, the higher the dampening force in a steering damper, the quicker kickback can be dampened. A "dampening curve" provides the various dampening levels at a particular velocity (piston speed) for a particular steering damper. The dampening curves are generated through laboratory tests by a hydraulic machine referred to as a "dyno machine" (dynamometer). A steering damper may be adjustable, that is, have different "click positions," which adjust the dampening to rider preferences. In the claims remaining before the court, the plaintiffs allege that Thompson's motorcycle accident was the result of the defective design of his 2007 Ninja ZX-10R motorcycle, because the steering damper on the motorcycle was insufficient and the motorcycle was not reasonably stable.

Defendant Kawasaki Heavy Industries, Ltd. (KHI), a Japanese company, admits that it is responsible for the design, developmental testing, and manufacture of the 2007 Kawasaki ZX-10R model motorcycle at issue in this case. Defendant Kawasaki Motors Corp., U.S.A. (KMC), a Delaware corporation with its principal place of business in Irvine, California, admits that it is responsible for the marketing of the motorcycle in question in the United States and the wholesale sale of the motorcycle in question to independent dealers in the United States. The parties agree that the motorcycle in question was equipped with a steering damper, as an Original Equipment Manufacturer (OEM) component, designed and manufactured by former defendant Ohlins Racing, AB (Ohlins), a Swedish company with its principal place of business in Väsby, Sweden.

The parties agree that both the 2006 and 2007 models of the Ninja ZX-10R motorcycles are part of Kawasaki's 1010 motorcycle platform and that they have the identical chassis. Indeed, they agree that the only difference between the 2006 and the 2007 model year Ninja ZX-10R is that the steering dampers on the two models are different. In over a year-and-a half of development of the model year 2006 Ninja ZX-

10R motorcycle, Kawasaki selected the Ohlins model SD-1790 steering damper with specific dampening levels and values that Kawasaki believed provided the optimal performance for the customer and the best fit for the 2006 model year. On March 10, 2006, however, Kawaski made the decision to modify the steering damper on the 2007 Ninja ZX-10R by reducing the dampening value. This decision followed a test ride in which the mounting bracket for the steering damper failed. The parties agree that, on April 11, 2006, Mr. Björkman, an Ohlins design engineer, wrote an e-mail to Kawasaki about the change, in which he stated, "I don't think you want very much less damping either, because there is almost no function left." Plaintiffs' Appendix at 47, Exhibit 3. The parties dispute whether Mr. Björkman was stating a safety concern or simply relaying performance concerns from racing customers. Ultimately, Kawasaki selected the Ohlins model SD-1791 steering damper for the 2007 Ninja ZX-10R motorcycle to replace the SD-1790 steering damper that had been used on the 2006 Ninja ZX-10R. Although the parties dispute the precise values, they agree that the steering damper on the 2007 Ninja ZX-10R model had significantly less viscous dampening for the motorcycle system (a maximum of 1750 newtons at .6 meters per second) than the steering damper on the 2006 Ninja ZX-10R (a maximum of either 4000 or 3600 newtons at .6 meters per second).

## B. Procedural Background

On March 16, 2011, prior to Scott Thompson's death, Randy W. Thompson and Vicky J. Thompson, individually and as personal representatives of Scott Thompson, filed a Complaint (docket no. 2), initiating this action against various defendants, including KHI, KMC, and Ohlins, and alleging claims arising from Scott Thompson's accident. The Thompsons filed their First Amended Complaint (docket no. 48), on April 23, 2012, after Scott Thompson's death. In their First Amended Complaint, the

Thompsons asserted claims of "strict liability product defects," alleging both "design" and "manufacturing" defects, "breach of implied warranty of fitness for a particular purpose," and "negligence" against KHI and KMC, in **Counts I**, **II**, and **III**, respectively; similar claims against Ohlins, in **Counts IV**, **V**, and **VI**, respectively; and a claim for "punitive damages" against KHI, KMC, and Ohlins in **Count VIII**.[1] KMC and KHI filed separate Answers (docket nos. 49 and 50, respectively) on May 4, 2012, and Ohlins filed its Answer (docket no. 52) on May 7, 2012, denying the claims against them in the Thompsons' First Amended Complaint.

On November 5, 2012, KMC and KHI, referring to themselves collectively as "Kawasaki," filed their Motion For Partial Summary Judgment (docket no. 64), seeking summary judgment in their favor on that part of the Thompsons' "product defect" claim alleging a "manufacturing defect"—but not on the part alleging a "design defect"—their "breach of implied warranty" claim, their "negligence" claim, and their prayer for "punitive damages." On November 5, 2012, Ohlins filed its Joinder In Motion For Summary Judgment (docket no. 66), seeking summary judgment in its favor on the same claims as Kawasaki, but accompanied by a separate brief, statement of undisputed facts, and appendix. After obtaining authorization and extensions of time to do so, Ohlins filed its November 27, 2011, Supplemental (Amended And Substituted) Motion For Summary Judgment (docket no. 71), adding that Ohlins was also entitled to summary judgment on the Thompsons' "design defect" claim. The parties filed resistances and replies in opposition to and further support of the summary judgment motions. Notably, in their Resistances, the Thompsons expressly did not resist summary judgment on their "breach of implied warranty" and "negligence"

---

[1] **Count VII** of the First Amended Complaint was a negligence claim against defendant MidAmerica Motoplex, Inc., the business that sold Scott Thompson the motorcycle in question, but that defendant had been dismissed from this action prior to my summary judgment ruling.

claims, because they believed that Iowa law recognizes only a single claim for liability for product defects, pursuant to the RESTATEMENT (THIRD) OF TORTS, PRODUCT LIABILITY (RESTATEMENT (THIRD)), encompassing design and manufacturing defects and negligence principles. They noted that they intended to pursue their "design defect" claims and their prayer for "punitive damages" on such claims against both Kawasaki and Ohlins, however.

On February 11, 2013, I granted that part of Kawasaki's November 5, 2012, joint Motion For Partial Summary Judgment (docket no. 64) seeking summary judgment on the Thompsons' "manufacturing defect" claim in **Count I**, the "breach of implied warranty of fitness for a particular purpose" claim in **Count II**, and the "negligence" claim in **Count III**, but denied that part of Kawasaki's Motion seeking summary judgment on the Thompsons' prayer for "punitive damages" in **Count VIII** on the remaining "design defect" cause of action against Kawasaki in **Count I**. I granted Ohlins's November 27, 2011, Supplemental (Amended And Substituted) Motion For Summary Judgment (docket no. 71) in its entirety, and dismissed Ohlins from this action. Thus, this action is proceeding to trial, currently scheduled to begin on March 18, 2013, *only* on the "design defect" claim against Kawasaki in **Count I** and the prayer for "punitive damages" on that underlying cause of action in **Count VIII**.

On January 24, 2013, while the summary judgment motions were still pending, the parties filed numerous pretrial motions, most of them challenging the admissibility of certain evidence. Specifically, Kawasaki and Ohlins filed two joint motions in limine: (1) their Joint Motion In Limine [ ] To Exclude Hearsay Statements And Lay Opinion Testimony Of David Lachioma (docket no. 89); and (2) their Joint Motion In Limine [ ] To Exclude Hearsay Testimony Of Randy Thompson (docket no. 90). Kawasaki filed three separate motions in limine: (1) its Motion To Bifurcate Punitive Damages From General Liability And To Exclude All References To Punitive Damages

Issues During The Compensatory Damages Phase Of The Trial (docket no. 92); (2) its Motion In Limine To Preclude Introduction Of Other Similar Incidents At Trial (docket no. 94); and (3) its Motion In Limine To Exclude Causation Opinions Of Plaintiffs' Expert, Mark Ezra (docket no. 97). Then-defendant Ohlins filed a separate Motion In Limine (docket no. 93), challenging eight categories of evidence and adopting and incorporating by reference any motions in limine or topics addressed in Kawasaki's motions in limine, to the extent that it had not formally joined in any such motions, and a separate, sealed Motion In Limine To Exclude Expert Testimony (docket no. 95). For their part, the Thompsons filed a Motion In Limine (docket no. 96), challenging eleven categories of evidence.

On February 8, 2013—a few days before I filed my ruling on the defendants' summary judgment motions, in which I granted Ohlins's Motion For Summary Judgment and dismissed Ohlins from this action—Ohlins filed its Resistance To Plaintiffs' Motion In Limine (docket no. 98). On February 11, 2013, the day that I filed my summary judgment ruling, Kawasaki and the Thompsons filed their resistances to the other pretrial motions. On February 20, 2013, Kawasaki filed reply briefs in support of all of its pretrial motions, with the exception of the motion to bifurcate proceedings.

Because I have dismissed Ohlins from this action, and Kawasaki has not expressly joined in either of Ohlins's separate pretrial motions, Ohlins's motions are denied as moot. I turn to the resolution of the pretrial motions by the remaining parties.

## II.   LEGAL ANALYSIS

### A.   Standards For Pretrial Evidentiary Challenges

The majority of the remaining parties' pretrial motions are motions in limine challenging the admissibility of various categories of evidence. The exception is Kawasaki's motion to bifurcate liability and punitive damages proceedings, but that motion also involves "evidentiary" issues. Therefore, I will begin my legal analysis with a summary of generally applicable evidentiary standards.

#### 1.   Rule 104 And Preliminary Questions Of Admissibility

As a preliminary matter, I note that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. I conclude that preliminary determination of the admissibility of the evidence put at issue in the parties' pretrial motions will likely serve the ends of a fair and expeditious presentation of issues to the jury.

#### 2.   Relevance and prejudice standards

Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "(a) . . . has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not.[2]

Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> The court may exclude relevant evidence if its probabtive value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

FED. R. EVID. 403.[3] As the Eighth Circuit Court of Appeals recently explained,

> [U]nder Rule 403, the [challenged evidence's] probative value must be *substantially* outweighed by *unfair* prejudice. "Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning. Whether there was unfair prejudice depends on whether there was an undue tendency to suggest decision on an improper basis." *United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007) (quotations omitted).

*United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) (emphasis in the original); *United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007) ("Rule 403 'does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly

---

[2] Rule 401 and Rule 402 were both amended in the course of amendments to the Federal Rules of Evidence in 2011, effective December 1, 2011. Like other amendments to the Federal Rules of Evidence in 2011, these amendments were "part of the general restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules," were "intended to be stylistic only," and were not intended "to change any result in any ruling on evidence admissibility." FED. R. EVID. 401, Advisory Committee Notes, 2011 Amendments; FED. R. EVID. 402, Advisory Committee Notes, 2011 Amendments.

[3] Stylistic amendments to this rule also became effective on December 1, 2011.

prejudicial, that is, if it tends to suggest decision on an improper basis.'" (quoting *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)).

The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence was unfairly prejudicial, because it might lead to a decision on an improper basis, where it purportedly had no connection to the charged offense and revealed grisly or violent behavior that made the defendant appear "dangerous"). Unfairly prejudicial evidence has also been described as evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)). "Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion." *Myers*, 503 F.3d at 681 (citing *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175, 126 S. Ct. 1343, 164 L. Ed. 2d 57 (2006)); *accord Muhlenbruch*, 634 F.3d at 1001 ("We review the district court's decision not to exclude evidence under Rule 403 for an abuse of discretion.").

Where evidence may otherwise be inadmissible pursuant to Rule 403, the Eighth Circuit Court of Appeals and the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of certain evidence may mitigate potential prejudice from such evidence. *See, e.g, United States v. Cowling*, 648 F.3d 690, 699 (8th Cir. 2011) ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."); *United States v. Young*, 644 F.3d

757, 761 (8th Cir. 2011) (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose).

### 3. *Hearsay and exceptions*

Rule 801(c) of the Federal Rules of Evidence defines "hearsay" as follows:

> **(c) Hearsay.** "Hearsay" means a statement that:
>
> > **(1)** the declarant does not make while testifying at the current trial or hearing; and
> >
> > **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement.

FED. R. EVID. 801(c).[4] Rule 802 provides that "[h]earsay is not admissible," unless provided otherwise by "a federal statute," "these rules," or "other rules prescribed by the Supreme Court." FED. R. EVID. 802. Thus, as the Eighth Circuit Court of Appeals has explained, "The Federal Rules of Evidence make hearsay inadmissible, subject to several exceptions." *United States v. Constantine*, 674 F.3d 985, 989 (8th Cir. 2012).

Rule 801(d) expressly identifies certain statements as "not hearsay." FED. R. EVID. 801(d). Rule 803 identifies "exceptions" to the hearsay rule "regardless of

---

[4] Rule 801 and the other rules relating to hearsay, like the other Federal Rules of Evidence, were amended in 2011, as "part of the general restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules," but such amendments were "intended to be stylistic only," and were not intended "to change any result in any ruling on evidence admissibility." *See, e.g.,* FED. R. EVID. 801, Advisory Committee Notes, 2011 Amendments.

whether the declarant is available as a witness"; Rule 804 identifies "exceptions" to the hearsay rule "if the declarant is unavailable as a witness"; and Rule 807 defines a "residual exception" to the hearsay rule. Evidence admissible pursuant to a "hearsay exception" may nevertheless be excluded pursuant to Rule 403, if its probative value is substantially outweighed by its potential for unfair prejudice. *See Constantine*, 674 F.3d at 990.

With these rules in mind, I turn to consideration of the admissibility of the evidence challenged by the parties, noting other standards for admissibility or exclusion of evidence where they are applicable.

## B.  *Kawasaki's Pretrial Motions*

As noted above, Kawasaki has filed five pretrial motions, two of them jointly with former defendant Ohlins. I will consider those motions in turn.

### 1.  *Exclusion of hearsay statements and lay opinions of Mr. Lachioma*

Kawasaki (with Ohlins) filed a Motion In Limine [ ] To Exclude Hearsay Statements And Lay Opinion Testimony Of David Lachioma (docket no. 89). More specifically, Kawasaki seeks to exclude the following testimony by Mr. Lachioma: (1) testimony that Mr. Welter, the only eyewitness to Scott Thompson's accident, said Scott Thompson's motorcycle "wobbled" immediately before the accident; (2) testimony about how the accident occurred; and (3) testimony about his recollections of statements on internet fora or in any other "enthusiast publications" related to motorcycles. I will consider the admissibility of these three challenged categories of testimony by Mr. Lachioma in turn.

### a. Testimony about what Mr. Welter said

#### i. Arguments of the parties

Kawasaki argues that Mr. Lachioma's testimony about what Mr. Welter said about the motorcycle accident is "classic" inadmissible hearsay and that Mr. Welter is presumably able to testify about his own perceptions of the accident. Kawasaki also argues that no hearsay exception is applicable to such testimony, because Mr. Welter's purported statement occurred so long after he observed the accident that his purported statement cannot be considered an "excited utterance" or "present sense impression." Kawasaki argues that the forty-five minutes or more that had elapsed between the accident and Mr. Welter's purported statement about it to Mr. Lachioma were sufficient time for reflection and deliberation and the abatement of the immediate stress from observing the accident.

The Thompsons argue, however, that Mr. Lachioma will testify that, at the time that Mr. Welter made the statement, he was still "distraught" and visibly upset from witnessing the accident. More specifically, they argue that Mr. Lachioma's testimony about what Mr. Welter said meets the requirements for an "excited utterance" under the Rule 803(2) hearsay exception and that courts have recognized that lapses longer than forty-five minutes do not necessarily disqualify statements from this exception.[5]

#### ii. Analysis

There is no doubt that Mr. Lachioma's testimony about what Mr. Welter said about the accident is hearsay within the meaning of Rule 801 and would, thus, be excluded pursuant to Rule 802, unless some exception applies. *See Constantine*, 674 F.3d at 989. However, the Thompsons argue that this testimony is admissible under

---

[5] Kawasaki's reply in further support of this motion does not address Mr. Lachioma's anticipated testimony about what Mr. Welter purportedly said about the accident.

either the "excited utterance" hearsay exception in Rule 803(2) or the "state of mind" hearsay exception in Rule 803(3).

Rule 803(2) states that "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused," is "not excluded by the rule against hearsay." FED. R. EVID. 803(2). As the Eighth Circuit Court of Appeals has explained, "For the excited utterance exception to apply, the declarant's condition at the time of making the statement must be such that the statement was spontaneous, excited, or impulsive rather than the product of reflection and deliberation." *Reed v. Thalacker*, 198 F.3d 1058, 1061 (8th Cir. 1999) (internal quotation marks omitted). This standard follows from the theory behind the exception, which "is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." Advisory Committee's Note on Fed.R.Evid. 803(2); *United States v. Demery*, 674 F.3d 776, 781 ("'The rationale of the excited utterance exception is that the stress of nervous excitement or physical shock stills the reflective faculties, thus removing an impediment to truthfulness.'" (quoting *United States v. DeMarce*, 564 F.3d 989, 997 (8th Cir. 2009)).

The district court's task is to determine whether the declarant was "under the stress of excitement caused by" the circumstances. FED. R. EVID. 803(2). As the Eighth Circuit Court of Appeals has explained,

> We have held that to determine whether a declarant was still under the stress of excitement when he or she made a statement, we may consider the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement.

*Reed*, 198 F.3d at 1061; *accord Demery*, 674 F.3d at 781 ("In determining whether a declarant was under the stress of excitement caused by a startling event when she made a statement, 'we consider the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement.'" (quoting *United States v. Wilcox*, 487 F.3d 1163, 1170 (8th Cir. 2007)).

It does not appear that the Eighth Circuit Court of Appeals has ever established a benchmark or rule of thumb about how much time between the startling event and the statement is too much for this exception to apply. *Compare United States v. Bercier*, 506 F.3d 625, 630 (8th Cir. 2007) (where statements "were made less than thirty minutes after the incident," the lapse of time did not make the statements inadimissible), *with United States v. Marrowbone*, 211 F.3d 452, 455 (8th Cir. 2000) (finding that allegations of abuse made three hours after the alleged abuse were not excited utterances because of the lapse of time). The court has, upon occasion, found that the exception was applicable to periods longer than half an hour. *See United States v. Kenyon*, 481 F.3d 1054, 1062 (8th Cir. 2007) (noting that the court had found a "close question" in a prior case, where a nine-year-old girl's statement was 45 to 75 minutes after the alleged sexual assault, but finding no abuse of discretion in admitting the evidence as an excited utterance, in *United States v. Iron Shell*, 633 F.2d 77, 86-87 (8th Cir. 1980)). Rather than establishing a rule of thumb concerning elapsed time, the court has observed that courts "'examine whether the declarant's stress or excitement was continuous from the time of the event until the time of the statements.'" *Demery*, 674 F.3d at 781 (quoting *Wilcox*, 487 F.3d at 1170).

Kawasaki focuses almost exclusively on the lapse of time between Scott Thompson's accident and Mr. Welter's statement to Mr. Lachioma—admittedly

somewhere between 45 and 90 minutes—as disproving that the statement was an "excited utterance" within the Rule 803(2) exception. As the evidence has been presented to me in a pretrial evidentiary motion, however, it appears that Mr. Lachioma will provide adequate testimony to demonstrate that, in the circumstances, Mr. Welter was still "distraught" and "under the stress of excitement" caused by the "startling event" of Scott Thompson's accident right in front of him. *See* FED. R. EVID. 403(2); *Demery*, 674 F.3d at 781; *Reed*, 198 F.3d at 1061. To put it another way, Mr. Welter was under "'stress or excitement [that] was continuous from the time of [Scott Thompson's accident] until the time of [Mr. Welter's] statements [to Mr. Lachioma]." *Demery*, 674 F.3d at 781. Mr. Welter was not a nine-year-old girl, but he had witnessed a terrible accident involving one of his best friends and had been continuously stressed by the aftermath of attempting to get help for Scott Thompson before making the statement to Mr. Lachioma. Although the shorter route to introducing Mr. Welter's statement about the accident would seem to be through testimony by Mr. Welter, Rule 803(2) does not require that the declarant be "unavailable," and Mr. Lachioma's testimony may, to some extent, corroborate Mr. Welter's later recollection of events as reflected in Mr. Welter's testimony.

Kawasaki relies on my conclusion in a prior case that ten minutes between an incident and the allegedly "excited utterance" was sufficient lapse of time to undermine admissibility of the hearsay statement pursuant to Rule 803(2), citing *Shannon v. Koehler*, No. C 08-4059-MWB, 2011 WL 923416, *3 (N.D. Iowa March 7, 2011). However, the circumstances in *Shannon* reasonably led to a different conclusion about whether the declarant had been continuously stressed by the incident. *See Demery*, 674 F.3d at 781. In *Shannon*, in between the "startling event," an altercation between the plaintiff and the defendant police officer, the declarant had gone to the restroom with another witness, returned to the bar in which the incident happened, was surrounded by

other police officers, was led outside and placed inside an officer's car where she made a recorded statement, and made some of her statements after reflection and deliberation in response to an inquiry by the officer questioning her, rather than as spontaneous statements made contemporaneously with the startling event. *Shannon*, 2011 WL 923416 at *3. In contrast, the record so far suggests that Mr. Welter's statement to Mr. Lachioma was spontaneous, while still stressed by Scott Thompson's accident and with no opportunity for deliberation or reflection.

This portion of Kawasaki's challenge to Mr. Lachioma's testimony is denied without prejudice to reassertion, if the evidence at trial demonstrates that the circumstances in which the allegedly "excited utterance" was made were not what they appear to be on the present record.[6]

### b. *Testimony about how the accident occurred*

### i. *Arguments of the parties*

Kawasaki also seeks to exclude testimony by Mr. Lachioma about how the accident occurred. Kawasaki asserts that Mr. Lachioma is not an expert and that his lay testimony about what caused the accident is not properly admissible. Kawasaki argues that Mr. Lachioma did not actually witness Scott Thompson's accident, because he was ahead of Scott Thompson and Mr. Welter; he lacks the technical and specialized knowledge to know what constitutes "wobble" and how it occurs; and his opinion is

---

[6] I conclude that Mr. Lachioma's testimony about what Mr. Welter said about the accident is likely admissible, if at all, as an "excited utterance." I conclude that it is not admissible under the "state of mind" exception in Rule 803(3), because "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)" within the meaning of the "state of mind" exception does *not* include "a statement of memory or belief to prove the fact remembered or believed." FED. R. EVID. 803(3). Mr. Lachioma's testimony about what Mr. Welter said about the accident is clearly offered as "a statement of memory or belief to prove the fact remembered or believed." *Id.*

based solely on what Mr. Welter said about the accident. Similarly, Kawasaki asserts that Mr. Lachioma should be precluded from testifying to his opinion that black marks on the road were caused by Scott Thompson's leather jacket when he slid off his motorcycle, rather than by skidding tires, because that testimony relates to a central issue of causation that is the domain of experts. Kawasaki also argues that Mr. Lachioma's opinions should be excluded pursuant to Rule 403, because they are more prejudicial than probative or may mislead or confuse the jurors. Kawasaki's basis for exclusion of the evidence pursuant to Rule 403, however, is the same as its basis for exclusion of this evidence generally—that Mr. Lachioma is not an expert.

The Thompsons argue that Mr. Lachioma is qualified by "practical experience" to give opinions about how the accident happened and that his observations of black marks on the road at the scene are relevant and admissible. The Thompsons point out that Mr. Lachioma was an experienced motorcycle rider and, indeed, was riding precisely the same model of motorcycle as Scott Thompson, but he had changed out the Ohlins steering damper for an after-market model with more dampening effect; he had just ridden over the same road surface as Scott Thompson when Scott Thompson had his accident; he was familiar with Scott Thompson's riding habits, because they frequently rode together; he had also previously experienced a high-speed "wobble" incident while riding his motorcycle; he had reviewed videos of other motorcycle riders experiencing high-speed "wobble"; he observed where Scott Thompson and his motorcycle came to rest; and he examined the steering damper on Scott Thompson's motorcycle after the accident. The Thompsons also argue that Mr. Lachioma can testify to his personal observations of the black marks on the roadway, which he photographed, and explain his reasons for believing that they were not tire skid marks, but were from Scott Thompson's jacket. It is not clear, however, whether the Thompsons assert that Mr. Lachioma's testimony meets the requirements for an

"expert" or a "lay" opinion: They do not assert that Mr. Lachioma was ever disclosed as an "expert witness" in this case, but they do rely on Mr. Lachioma's skill and knowledge and they assert that the relative skill or knowledge of an expert goes to the weight of his or her testimony, not to its admissibility.

Kawasaki's reply in support of this motion focuses entirely on Mr. Lachioma's testimony about how the accident occurred. In its reply, Kawasaki argues that (1) Mr. Lachioma possesses no experience, skill, knowledge, training, or education in any discipline that is relevant to his opinions; (2) Mr. Lachioma's opinions are not based on sufficient facts or reliable methods but on inadmissible evidence, including YouTube videos, unverified anecdotes, anonymous Internet postings, an *ad hoc* accident investigation, and rank speculation; and (3) the Thomspons' last-minute designation of Mr. Lachioma as an expert constitutes a flagrant violation of the Scheduling Order in this case.

### ii.    *Analysis*

The Eighth Circuit Court of Appeals has explained,

> Rule 701 states that a witness not testifying as an expert may offer opinion testimony so long as the testimony is "rationally based on the perception of the witness." Fed.R.Evid. 701(a). "'Personal knowledge or perceptions based on experience' is sufficient foundation for lay opinion testimony." *United States v. Smith*, 591 F.3d 974, 982 (8th Cir. 2010) (quoting *In re Air Crash at Little Rock Arkansas on June 1, 1999*, 291 F.3d 503, 515–16 (8th Cir.), *cert. denied*, 537 U.S. 974, 123 S.Ct. 435, 154 L.Ed.2d 331 (2002)).

*United States v. Faulkner*, 636 F.3d 1009, 1018 (8th Cir. 2011); *United States v. Smith*, 591 F.3d 974, 982 (8th Cir. 2010) ("'Rule 701 provides that if a witness is not testifying as an expert, then any testimony by the witness expressing his or her opinion or inferences *is limited to* those that are rationally based on the witness's perception and

helpful to understanding the witness's testimony or determining a fact in issue.'"
(quoting *U.S. Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009),
with emphasis added here).  On the other hand,

> [A] lay witnesses's opinion must not be based on "scientific,
> technical, or other specialized knowledge within the scope of
> Rule 702."  Fed.R.Evid. 701.  This inquiry requires a case-
> by-case analysis of both the witness and the witnesses's [sic]
> opinion.  *See In re Air Crash*, 291 F.3d at 515–16.

*Smith*, 591 F.3d at 982-83.

The Thompsons appear to want it both ways as to Mr. Lachioma's testimony
about what caused Scott Thompson's accident:  On the one hand, they assert that he is
stating an opinion based not only on his "personal observations" and his "practical
experience," but on the other hand, they seek to demonstrate his "technical" knowledge
of motorcycles and Scott Thompson's motorcycle in particular.  *Compare* FED. R.
EVID. 701 (stating that lay opinions are admissible so long as they are "rationally based
on the perception of the witness"); *Faulkner*, 636 F.3d at 1018 (same), *with* FED. R.
EVID. 702 (stating standards for expert opinions, based on "scientific, technical, or
other specialized knowledge"); *Smith*, 591 F.3d at 982-83 (explaining that lay opinions
cannot be based on "scientific, technical, or other specialized knowledge" within the
scope of Rule 702).  Indeed, they seem to argue that Mr. Lachioma's qualifications
meet the standards for "expert" opinions, even though they are not based on formal
training.

Mr. Lachioma was not timely disclosed as an "expert," so that his opinions are
limited to the scope and basis of "lay" opinions.  Mr. Lachioma did *not* observe Scott
Thompson's accident, and he cannot use Mr. Welter's statement about what happened
as a substitute for such personal observation to state a "lay" opinion.  *See Faulkner*,
636 F.3d at 1018 (the basis for lay opinions must be personal knowledge or

perceptions); *Smith*, 591 F.3d at 982 (expressly stating that this is the *limit* of a lay witness's admissible opinion). Mr. Lachioma can certainly testify about anything that he did, in fact, observe for himself about the scene of the accident and, to the extent that his opinion is based on such personal observations and his personal experience, he may offer it. *Id.* However, he will not be permitted to stray into opinions based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." *See Smith*, 591 F.3d at 982-83.

More specifically, Mr. Lachioma can testify to circumstances that he personally observed at the accident scene, such as the relative locations of Scott Thompson and the motorcycle after the accident and the condition of and marks on the road surface on which the accident occurred. To the extent that he can testify that he has observed road marks made by tires and road marks made by skidding a leather-clad rider across the road surface, he may testify to his belief that the black marks found on the road after Scott Thompson's accident appeared to him to be caused by Scott Thompson's leather jacket as he skidded across the road surface after being ejected from the motorcycle. Although Mr. Lachioma cannot testify as to the nature or cause of motorcycle "wobble" in the technical sense, he can testify about his understanding of "wobble" in the lay sense, based on what he has personally seen or personally experienced, such as his own personal experience of what he describes as "wobble." He can also testify that he changed out the OEM Ohlins steering damper on his 2007 Ninja motorcycle, the identical model of motorcycle that Scott Thompson was riding, for an after-market steering damper and what he perceived to be the effect of the change on what he describes as "wobble." To the extent that he personally observed it, he can testify to the "click" position Scott Thompson preferred and the condition of Scott Thompson's steering damper, and he may also testify that he examined the steering damper after the accident and what "click" position it appeared to be in at that time. What he plainly

cannot testify to is any opinion about the cause of Scott Thompson's accident, because he admittedly did not actually observe the accident.

This portion of Kawasaki's challenge to Mr. Lachioma's testimony is granted to the extent that Mr. Lachioma's testimony about Scott Thompson's accident must be "rationally based on [his] perception," but not on "scientific, technical, or other specialized knowledge." *Id.*

### c. Testimony about statements from internet fora or "enthusiast publications"

#### i. Arguments of the parties

Finally, as to Mr. Lachioma's testmiony, Kawasaki seeks to exclude testimony about Mr. Lachioma's recollections of statements on internet fora or in any other "enthusiast publications" related to motorcycles. Kawasaki argues that such postings and publications are, themselves, inadmissible hearsay.[7] Kawasaki also argues that statements in such sources are irrelevant, because the opinions and comments of anonymous internet users concerning motorcycles are irrelevant to whether or not Scott Thompson's motorcycle was defectively designed, as they are unverified and unverifiable comments. Kawasaki also argues that such opinions and comments are unfairly prejudicial, because there is no basis whatsoever for jurors to assess their credibility.

The Thompsons argue that Mr. Lachioma's decision to replace the Ohlins steering damper on his motorcycle, which was otherwise the same model as Scott Thompson's motorcycle, was based, in part, on Mr. Lachioma's experience riding with the OEM Ohlins steering damper compared to other steering dampers. They contend that Mr. Lachioma will also explain that another reason that he replaced his OEM

---

[7] Interestingly, Kawasaki does not go the next step by arguing that Mr. Lachioma's recounting of such statements would be double hearsay, with no hearsay exception for any "layer" of hearsay. *See* FED. R. EVID. 805.

Ohlins steering damper with a different after-market one was customer comments relating to the OEM Ohlins steering damper on Ninja ZX-10R internet fora. The Thompsons argue that, without an explanation of this reason, jurors will be left to speculate as to why Mr. Lachioma replaced the OEM Ohlins steering damper with the after-market steering damper. They also argue that the statements in the publications that Mr. Lachioma will mention are not being offered for their truth—so that they are not hearsay—but to show Mr. Lachioma's reasons (presumably, his "state of mind") for replacing the Ohlins steering damper. The Thompsons also argue that such evidence is not unfairly prejudicial, but the lack of a full explanation is prejudicial to them, because it will confuse and mislead the jury.

### ii. *Analysis*

In pertinent part, Rule 803(3) excepts from the hearsay rule "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed. . . ." FED. R. EVID. 803(3); *D.J.M. ex rel. D.M. v. Hannibal Pub. Sch. Dist. No. 60*, 647 F.3d 754, 783 (8th Cir. 2011) ("Federal Rule of Evidence 803(3) provides that a statement of the declarant's 'then existing state of mind' is not excludable hearsay."). The state of mind at issue is the *declarant's*, not the testifying witness's. *See First Nat'l Bank in Sioux Falls v. First Nat'l Bank South Dakota*, 679 F.3d 763, 768 (8th Cir. 2012). However, such statements may also be admissible because they show the effect of the out-of-court statements on the listener. *D.J.M.*, 647 F.3d at 763 (citing *Curtis Lumber Co., Inc. v. Louisiana Pac. Corp.*, 618 F.3d 762, 783 n.18 (8th Cir. 2010)). "'A key circumstantial guarantee of trustworthiness in respect to Rule 803(3) is that it requires that the statement be contemporaneous with the declarant's "then existing" state of mind, emotion, sensation, or physical condition.'"

*United States v. Barraza*, 576 F.3d 798, 805 (8th Cir. 2009) (quoting *United States v. Naiden*, 424 F.3d 718, 722 (8th Cir. 2005)). Thus, it does not reach "self-serving declarations about a past attitude or state of mind." *United States v. Partyka*, 561 F.2d 118, 125 (8th Cir. 1977), *quoted in Naiden*, 424 F.3d at 722.

Mr. Lachioma's statement of his reasons for replacing the steering damper, to the extent that those reasons are based on his *own* observations and experience riding his 2007 Ninja motorcycle, are admissible as showing his "then-existing state of mind." *See* FED. R. EVID. 803(3); *D.J.M.*, 647 F.3d at 783 ("Federal Rule of Evidence 803(3) provides that a statement of the declarant's 'then existing state of mind' is not excludable hearsay."). They are not admissible, however, "to prove the fact remembered or believed," that is, that there was a problem with the steering damper of the 2007 Ninja motorcycle. FED. R. EVID. 803(3). The line between the two is a gray one, inviting consideration of the admissibility of such testimony under Rule 403, *see Constantine*, 674 F.3d at 990 (noting that evidence admissible pursuant to a "hearsay exception" may nevertheless be excluded pursuant to Rule 403, if its probative value is substantially outweighed by its potential for unfair prejudice), a matter to which I will return below.

The Thompsons have at least an arguable basis for asserting that the statements in various publications that Mr. Lachioma might repeat are not hearsay, because they are not offered for their truth, *see* FED. R. EVID. 801, and that, at each level of hearsay—both the statements themselves and Mr. Lachioma's reiteration of them, *see* FED. R. EVID. 805 (hearsay in hearsay is admissible if each layer meets an exception)— the "then-existing state of mind" exception of Rule 803(3) would apply, reflecting the original declarant's belief about the steering damper on the 2007 Ninja motorcycle and Mr. Lachioma's reasons for changing the steering damper on his 2007 Ninja motorcycle. *See D.J.M.*, 647 F.3d at 763 (statements of a declarant's then-existing

state of mind may also be admissible because they showed the effect of the out-of-court statements on the listener).

I do not discount that Mr. Lachioma's statement of his reasons for changing his steering damper, based on his own observations and experience and based on what others said about the steering damper or the steering on the 2007 Ninja motorcycle in various paper or on-line publications, pose a potential for prejudice, in that they might be taken for their truth, not for their indication of the declarants' state of mind or their effect on Mr. Lachioma's decision. *See* FED. R. EVID. 403 (evidence may be excluded if it is more prejudicial than probative); *Muhlenbruch*, 634 F.3d at 1001 (explaining that evidence is unduly prejudicial if, for example, it suggests a decision on an improper basis); *Myers*, 503 F.3d at 681 (same). Moreover, evidence that other people disliked the steering damper on the 2007 Ninja is largely cumulative of Mr. Lachioma's explanation of his reasons, based on his own observations and experience riding the 2007 Ninja with the OEM steering damper. FED. R. EVID. 403 (relevant evidence may also be excluded as cumulative).

Nevertheless, I conclude that Mr. Lachioma can testify that his reasons for changing the steering damper on his 2007 Ninja motorcycle included both his own observations about and experience with the OEM Ohlins steering damper and his reading of reviews and comments about the OEM Ohlins steering damper and other steering dampers on internet fora or in other publications. Neither his reasons nor the statements of others on which he based his reasons can be offered for their truth, but only to show their effect on Mr. Lachioma's state of mind. *See D.J.M.*, 647 F.3d at 763 (statements of a declarant's then-existing state of mind may also be admissible because they showed the effect of the out-of-court statements on the listener). Moreover, the purposes for which the statements can and cannot be used are easily addressed in a limiting instruction at the time that such evidence is offered, if Kawasaki

so requests. Such a limiting instruction on the proper uses of certain evidence will mitigate the potential prejudice, if there is any, from such evidence. *See, e.g, Cowling*, 648 F.3d at 699 ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted.").

Thus, the last part of this Motion In Limine concerning Mr. Lachioma's testimony is denied.

### 2. *Exclusion of hearsay testimony of Randy Thompson*

Kawasaki (with Ohlins) also filed a Motion In Limine [ ] To Exclude Hearsay Testimony Of Randy Thompson (docket no. 90). In this motion, Kawasaki seeks to exclude testimony by Randy Thompson that his son, Scott Thompson, told him that he always had the steering damper on his motorcycle at the highest setting.

### a. *Arguments of the parties*

Kawasaki argues that this evidence is inadmissible because (1) it is hearsay; (2) it violates the "physical facts rule" as it is in direct contradiction to objective photographic evidence; and (3) any probative value is substantially outweighed by the risk of misleading and confusing the jury and prejudicing Kawasaki. More specifically, Kawasaki argues that Randy Thompson's testimony about what Scott Thompson said is hearsay, because it is offered to prove the truth of the matter asserted, the "click" position of the steering damper on Scott Thompson's motorcycle at the time of the accident. Kawasaki argues that, without Scott Thompson present in court, under oath, and subject to cross-examination, his statement is inherently unreliable and should not be presented to the jury as evidence. Kawasaki also argues that the "physical facts rule" bars such testimony, because it is undisputed that Scott Thompson's steering damper was not set at the highest setting, based on photographs taken immediately after the accident. Finally, Kawasaki argues that this evidence is unfairly prejudicial, because the statement lacks probative value, because it is hearsay and it conflicts with

objective photographic evidence, and because it is highly likely to confuse or mislead the jury.

In response, the Thompsons argue that Scott Thompson's statement to his father is admissible pursuant to Rule 804(a)(4), because he is "unavailable" owing to his death, and pursuant to Rule 807, the "residual hearsay exception." They argue that Scott Thompson's statement is trustworthy and reliable because it was stated relatively soon after he returned home from his acute hospital care from the accident, but before the particular steering damper or its setting came to the forefront in the litigation. They also argue that Scott Thompson's statement is not contrary to "physical fact," because the experts in the case have opined that the steering damper at issue was set in click position 5, 11, or 17 (where 5 was the highest) at the time of the accident. Thus, they argue that this evidence is probative on a contested issue and not unfairly prejudicial or misleading.

In reply, Kawasaki argues that the hearsay statement in question does not meet the requirements of the Rule 807 "residual hearsay exception." Kawasaki denies that the statement has equivalent circumstantial guarantees of trustworthiness, because it is contrary to the photographic evidence; the photographs are more probative of the setting on the steering damper at the time of the accident; and admitting such evidence would not further any of the purposes of the rules of evidence or the interests of justice.

### b.    *Analysis*

Kawasaki contends that this evidence should be excluded, because it violates the "physical facts rule" as it is in direct contradiction to objective photographic evidence. Kawasaki is correct that, decades ago, the Eighth Circuit Court of Appeals recognized,

> 'Where undisputed physical facts are entirely inconsistent with and opposed to testimony necessary to make a case for the plaintiff, the physical facts must control. No jury can be allowed to return a verdict based upon oral testimony which

29

> is flatly opposed to physical facts, the existence of which is incontrovertibly established. *Stolte v. Larkin*, 8 Cir., 110 F.2d 226, 229 (1940).' *Born v. Osendorf*, 8 Cir., 329 F.2d 669, 672 [(1964)].

*Wood v. United States*, 342 F.2d 708, 713-14 (8th Cir. 1965). Other Circuit Courts of Appeals have reiterated this rule more recently, stating it in terms of "indisputable physical facts" and "incontrovertibly established" facts. *See, e.g., Whitehead v. Bond*, 680 F.3d 919, 925 (7th Cir. 2012) (stating the rule as contradiction of "indisputable physical facts"); *Estate of Trentadue v. United States*, 397 F.3d 840, 864 (10th Cir. 2005) (stating the rule as "flatly opposed to physical facts, the existence of which is incontrovertibly established"). Kawasaki cannot rely on this rule, however, where experts disagree on whether the "click" setting of Thompson's steering damper was 5, 11, or 17, based on their review of the physical evidence. In these circumstances, the "click" setting is not "undisputedly," "indisputably," or "incontrovertibly" established. Rather, Scott Thompson's statement about the "click" setting that he used is *consistent* with at least some expert conclusions drawn from the physical facts. Thus, the "physical facts rule" does not bar Randy Thompson's testimony about Scott Thompson's statement about the "click" setting of the steering damper on his motorcycle.

There is no question, however, that Scott Thompson's statement about the setting of the steering damper on his motorcycle is hearsay, that is, that it is an out-of-court statement offered for its truth. FED. R. EVID. 801. Hearsay is excluded, unless it meets a "hearsay exception." FED. R. EVID. 802; *Constantine*, 674 F.3d at 989. The Thompsons argue that this statement is, indeed, admissible pursuant to the Rule 807 "residual hearsay exception."

Rule 807 establishes the "residual" or "catch-all" exception to the rule prohibiting the admission of hearsay. FED. R. EVID. 807; *United States v. White Bull*,

646 F.3d 1082, 1091 (8th Cir. 2011). "A statement having circumstantial guarantees of trustworthiness can be admitted under Rule 807 if the court determines that it meets the other requirements of Rule 807, including materiality, probative value, the interests of justice, and notice." *United States v. Halk*, 634 F.3d 482, 488-89 (8th Cir. 2011). Somewhat more specifically,

> For a hearsay statement to be admissible under Rule 807, the rule requires that:
>
>> (1) the statement has equivalent circumstantial guarantees of trustworthiness to the other hearsay exceptions; (2) the statement is offered as evidence of a material fact; (3) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; (4) the general purposes of the rules and the interests of justice will best be served by its admission; and (5) adequate notice must be given to the opposing party.
>
> *United States v. Peneaux*, 432 F.3d 882, 891 (8th Cir. 2005).

*White Bull*, 646 F.3d at 1091. As to the first requirement, "'[t]rustworthiness is analyzed under a broad totality of the circumstances test.'" *Halk*, 634 F.3d at 489 (quoting *United States v. Shields*, 497 F.3d 789, 794 (8th Cir. 2007)). Those circumstances include "'the circumstances at the time of the declaration and the credibility of *the declarant*.'" *Id*. (quoting *United States v. Thunder Horse*, 370 F.3d 745, 748 (8th Cir. 2004), with emphasis added in *Halk*). "Rule 807 is applicable only in exceptional circumstances." *Id*. (citing *United States v. Dorian*, 803 F.2d 1439, 1443-44 (8th Cir. 1986), as stating that "Congress intended the residual hearsay exception to be used very rarely and only in exceptional circumstances").

On the present record, whether or not Randy Thompson's testimony about what Scott Thompson told him about the "click" position of the steering damper on his motorcycle meets the requirements for admissibility pursuant to the "residual hearsay exception" in Rule 807 is a close question. *See White Bull*, 646 F.3d at 1091. There is no question now that the "click" position of the steering damper is a material fact, and no question that Scott Thompson's testimony about it is evidence of that fact. *Id.* Although the parties dispute the relative probative value of such testimony, *id.*, as the Thompsons argue, Scott Thompson is the only person who had first-hand knowledge of how he set his steering damper, and I have rejected Kawasaki's "physical facts rule" argument. It is also clear that Kawasaki has had adequate notice that the evidence will be offered, in light of Kawasaki's challenge to that evidence. *Id.*

Consequently, the potentially dispositive issue in the Rule 807 analysis is whether or not the statement has equivalent circumstantial guarantees of trustworthiness to other hearsay exceptions, *id.*, considering the totality of the circumstances, including the timing of the statement and the declarant's credibility. *Halk*, 634 F.3d at 489. The troubling issue here is not just the precise timing of the declarant's statement, but the timing of *the reporting witness's* first report of the statement. If the record at trial demonstrates that Scott Thompson first made the statement *before* it was apparent that the steering damper or the "click" position of that steering damper would be at the center of this litigation, then the declarant's credibility is less likely to be an issue. *See id.* (noting that the credibility of the declarant is relevant to the Rule 807 "trustworthiness" analysis). At the same time, when the reporting witness, Randy Thompson, first reported Scott Thompson's statement about the "click" setting is also relevant to "trustworthiness," because common sense suggests that a reporting witness is not immune to self-serving "recollections" about statements made by a deceased declarant, when it becomes apparent that a certain issue is important in the litigation.

*Id.* ("'[T]rustworthiness is analyzed under a broad totality of the circumstances test.'" (quoting *Shields*, 497 F.3d at 794)). If Randy Thompson did not report Scott Thompson's statement about the "click" setting he preferred until after the "click" setting became an issue, his report of the statement has considerably less guarantee of trustworthiness. Consequently, I cannot determine the admissibility of the hearsay statement until this issue is clarified, for example, in proceedings during trial outside the presence of the jury.

Finally, Kawasaki argues that this evidence is more prejudicial than probative, so that it should be excluded pursuant to Rule 403. It is true that evidence admissible pursuant to a "hearsay exception" may nevertheless be excluded pursuant to Rule 403, if its probative value is substantially outweighed by its potential for unfair prejudice. *See Constantine*, 674 F.3d at 990. I cannot make a Rule 403 determination pretrial, either, however. Kawasaki's assertions of "lack of probative value" and "prejudice" are simply repackaging of its "inadmissible hearsay" and "physical facts rule" arguments. Although I have rejected the "physical facts rule" argument, I have not yet concluded that the hearsay statement is sufficiently trustworthy to be admissible pursuant to the Rule 807 "residual hearsay exception" or to overcome "prejudice" objections.

Thus, ruling is reserved on this Motion In Limine.

### 3.    *Motion to bifurcate proceedings*

The first of Kawasaki's separate pretrial motions is its Motion To Bifurcate Punitive Damages From General Liability And To Exclude All References To Punitive Damages Issues During The Compensatory Damages Phase Of The Trial (docket no. 92). In this motion, Kawasaki requests that I bifurcate punitive damages from the general liability phase of trial and also exclude evidence relating to whether the

Thompsons are entitled to punitive damages during the general liability phase of the trial. The Thompsons resist this motion.

### a. Arguments of the parties

Kawasaki argues that the issues underlying its alleged general liability and its alleged liability for punitive damages are clearly separable. In other words, Kawasaki argues that evidence establishing the Thompsons' claim for punitive damages is not relevant to whether Kawasaki is liable on the "design defect" claim. Somewhat more specifically, Kawasaki argues that, to establish liability, the Thompsons must prove a design defect, through expert testimony focusing on technical aspects of the motorcycle, but to prove their entitlement to punitive damages, they must prove that Kawasaki's conduct constituted willful and wanton disregard of the rights and safety of another, with evidence focusing on Kawasaki's decision-making process. Kawasaki argues that evidence about its decision-making process will not change the presence or absence of a design defect. Kawasaki also argues that evidence and argument going solely to punitive damages should be excluded in the initial liability phase of the trial, because such evidence threatens to confuse the issues, mislead the jury, and cause unfair prejudice to Kawasaki, particularly with regard to evidence of Kawasaki's financial condition.

The Thompsons argue, however, that Kawasaki's "prejudice" argument lacks merit and that bifurcation will not serve judicial economy. They argue that the evidence that is relevant to and that will establish their "design defect" claim is the same evidence that will establish liability for punitive damages against defendant Kawasaki. They point out that evidence of Kawasaki's conduct and design decisions is relevant to the "design defect" claim, as well as the punitive damages issue, because it shows that Kawasaki made a drastic design change in the middle of the production process, without adequate reasons to justify the change. They also argue that, because

the evidence is relevant to all pertinent issues, including a design defect and punitive damages, Kawasaki is not prejudiced by the introduction of such evidence. The only evidence that the Thompsons suggest is even arguably not relevant to both issues is Kawasaki's financial condition or net worth. However, they argue that the introduction of such evidence is not unfairly prejudicial.

### b. Analysis

Rule 42(b) of the Federal Rules of Civil Procedure provides for "separate trials" of "issues, claims, cross-claims, counterclaims, or third-party claims" "[f]or convenience, to avoid prejudice, or to expedite and economize." FED. R. CIV. P. 42(b). "The denial [and presumably the grant] of a motion to bifurcate under Fed.R.Civ.P. 42(b) is reviewed for abuse of discretion." *Athey v. Farmers Ins. Exchange*, 234 F.3d 357, 362 (8th Cir. 2000); *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205-1213-14 (8th Cir. 1999) (holding that "[t]he decision of whether to isolate the punitive damages phase of the trial is within the sound discretion of the trial court"). Denial of a motion to bifurcate is appropriate, if the movant fails to demonstrate that doing so is necessary to avoid prejudice. *Id.* Similarly, denial of such a motion is appropriate if evidence is relevant to both the underlying claim and punitive damages, because the movant cannot claim prejudice in such circumstances. *EEOC v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998).

As the Eighth Circuit Court of Appeals has explained, a "design defect" claim involves "'an intended configuration that may produce unintended and unwanted results.'" *Linden v. CNH America, L.L.C.*, 673 F.3d 829, 834 (8th Cir. 2012) (quoting *Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1317 (11th Cir. 1989)). The Iowa Supreme Court has adopted the RESTATEMENT (THIRD) OF TORTS, PRODUCT LIABILITY § 2 (RESTATEMENT (THIRD) § 2), as the basis for such claims in Iowa. *Scott*

*v. Dutton-Lainson Co.*, 774 N.W.2d 501, 504 (Iowa 2009). More specifically, the
RESTATEMENT (THIRD) explains,

> A product
>
> * * *
>
> (b) is defective in design when the foreseeable risks of harm
> posed by the product could have been reduced or avoided by
> the adoption of a reasonable alternative design by the seller
> or other distributor, or a predecessor in the commercial
> chain of distribution, and the omission of the alternative
> design renders the product not reasonably safe[.]

RESTATEMENT (THIRD) § 2(b). Because a defective design claim requires consideration
of whether or not the risks of the product "could have been reduced or avoided by the
adoption of a reasonable alternative design," *id.*, it follows that Kawasaki's decision-
making process, which the summary judgment record showed involved at least some
consideration—and, ultimately, cursory rejection—of alternative designs, is relevant to
the "design defect" claim. As I indicated in my summary judgment ruling, such
evidence would also warrant a reasonable juror concluding that Kawasaki took a
persistent course to reduce the dampening level of the steering mechanism with no care
and with disregard of the safety consequences, for purposes of punitive damages. *See
Thompson*, ___ F. Supp. 2d at ___, 2013 WL 494453 at *18. Thus, the same evidence
is relevant to both the underlying "design defect" claim and the Thompsons' entitlement
to punitive damages. Under these circumstances, Kawasaki cannot claim prejudice
from denial of bifurcation. *HBE Corp.*, 135 F.3d at 551.

Kawasaki also cannot claim that it will be unfairly prejudiced by introduction of
evidence about its financial condition in a single proceeding, where I will instruct the
jurors that they can consider such evidence only to determine the amount of punitive
damages, if they determine that punitive damages should be awarded based on

Kawasaki's conduct. Such a limiting instruction on the proper uses of certain evidence will mitigate the potential prejudice, if there is any, from such evidence. *See, e.g,* *Cowling*, 648 F.3d at 699 ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted.").

Finally, bifurcation of the interwoven issues of liability and punitive damages would be inconvenient, confusing, and result in a loss rather than a gain in judicial economy and economy to the parties, not to mention unnecessary delays for the jury. *See* FED. R. CIV. P. 42(b) (considering whether to bifurcate in the interests of "convenience, to avoid prejudice, or to expedite and economize").

This pretrial motion is denied.

### 4.    *Exclusion of similar incidents evidence*

Kawasaki's next pretrial motion is its Motion In Limine To Preclude Introduction Of Other Similar Incidents At Trial (docket no. 94). In that motion, Kawasaki seeks to exclude the introduction at trial of evidence of other incidents, based on four warranty claims or other customer complaints. The Thompsons resist exclusion of such evidence.

#### a.    *Arguments of the parties*

Kawasaki argues that such evidence is irrelevant and inadmissible, unless the Thompsons demonstrate that the incidents are substantially similar to the incident at issue, but this they cannot do. Here, Kawasaki argues, the incidents reflected in the claims or complaints identified by the Thompsons are not substantially similar to the incident at issue in this case. Kawasaki argues that a number of variables influence how a motorcycle performs in a given situation, including the weight and condition of the motorcycle, the weight of the operator, the experience and skill level of the operator, the terrain, the vehicle speed, and the operator's actions. Kawasaki argues that, because human action and reaction play such a significant role in the outcome of

any given situation involving a motorcycle, the requirement of substantial similarity is particularly crucial. Kawasaki argues that the Thompsons cannot meet their high burden to show substantial similarity of any of the other reported incidents, because the brief description of the customers' perceptions of the problems do not provide sufficient information to show substantial similarity. Kawasaki also argues that introduction of those other claims is more likely to confuse the issues, mislead the jury, and cause unfair prejudice to Kawasaki than it is to be probative of a product defect. Kawasaki argues that the obvious danger associated with the introduction of other incidents is that those incidents will confuse the issues of the case and mislead the jury by diverting its attention to collateral matters, and that it will be prejudiced by having to defend against unrelated incidents.

The Thompsons argue that the customer warranty claims are relevant and meet the substantial similarity requirement, such that they demonstrate Kawasaki's notice, the magnitude of the danger involved, Kawasaki's ability to correct a known defect, and the lack of safety of the motorcycle for intended uses, as well as causation. The Thompsons argue that "identical circumstances" are not required to show "substantial similarity" of the incidents. The Thompsons point out that each of the warranty claims involved a 2007 Ninja ZX-10R motorcycle and the OEM Ohlins steering damper, and that, in each instance, the customer complained that the steering damper had little or no dampening action. Because Kawasaki determined that each steering damper at issue was working properly, the Thompsons argue that Kawasaki was put on notice that the steering damper was not providing adequate dampening effect.

In reply, Kawasaki argues that, to introduce the proffered warranty complaints at trial, the Thompsons must demonstrate not only that the complaints involved the same products as those at issue here, but also involved substantially similar facts and circumstances, which they cannot do. Kawasaki reiterates that, because myriad factors

have an effect on how a motorcycle performs, some of which cannot be blamed on a manufacturer, it is important that the circumstances of supposedly similar incidents meet a very high level of "substantial" similarity.

### b. Analysis

The Iowa Supreme Court has recognized that evidence of consumer complaints received by a product manufacturer prior to the incident involving the plaintiff are relevant to the plaintiff's recovery for a product defect under Iowa law. *See, e.g., Mercer v. Pittway Corp.*, 616 N.W.2d 602, 616 (Iowa 2000). Similarly, the Eighth Circuit Court of Appeals has recognized that "[e]vidence of similar incidents may be relevant to prove the defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation." *Lovett ex rel. Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1081 (8th Cir. 2000); *accord Arabian Agric. Servs. Co. v. Chief Indus., Inc.*, 309 F.3d 479, 485 (8th Cir. 2002) (citing *Lovett*, 201 F.3d at 1081). On the other hand, the Eighth Circuit Court of Appeals has also recognized that, in a products liability action, "'admitting similar-incident evidence also threatens to raise extraneous controversial issues, confuse the issues, and be more prejudicial than probative.'" *J.B. Hunt Transport, Inc. v. General Motors Corp.*, 243 F.3d 441, 445 (8th Cir. 2001) (quoting *Lovett*, 201 F.3d at 1081). Thus, the Eighth Circuit Court of Appeals has explained,

> The decision whether to admit "similar-incident" evidence is committed to the sound discretion of the district court. *Novak v. Navistar Int'l Transp. Corp.*, 46 F.3d 844, 851 (8th Cir. 1995). A district court's refusal to give a limiting instruction on prior similar incidents is also reviewed under the abuse of discretion standard. *See Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 621 (8th Cir. 1983).

*Arabian Ag. Servs. Co.*, 309 F.3d at 485.

"[T]he party seeking admission of the evidence must demonstrate that the circumstances between the two incidents are substantially similar." *J.B. Hunt Transport, Inc.*, 243 F.3d at 445 (citing *Drabik v. Stanley–Bostitch, Inc.*, 997 F.2d 496, 508 (8th Cir. 1993)).  The party asserting admission of similar-incident evidence need not show that consumer complaints or other instances involved "exact" matches with the incident at issue in the case.  *Kehm v. Proctor & Gample Mfg. Co.*, 724 F.2d 613, 625-26 (8th Cir. 1983).  At the same time, the admission of such evidence is likely to be proper, if the opposing party is given ample opportunity to rebut the force of the other complaints by pointing out dissimilarities between the circumstances and the complaints in the allegedly similar incidents and the incident at issue.  *Kehm v. Proctor & Gample Mfg. Co.*, 724 F.2d 613, 625-26 (8th Cir. 1983).  If the parties make these showings, it is then up to the jury to decide what weight to give the complaints from other consumers or the other incident evidence.  *Id.*

The Thompsons have made sufficient showing, at least on the present record, that other complaints about the steering damper on the 2007 Ninja motorcycle involved substantially similar circumstances.  *J.B. Hunt Transport, Inc.*, 243 F.3d at 445 (stating that this is the burden of the proponent of the evidence).  That is, they have shown that the other incidents involved complaints that the same steering damper on the same model motorcycle had insufficient dampening effect, sometimes at the speeds that Scott Thompson was allegedly traveling at the time of his accident.  The Thompsons are not required to show that the other incidents are "exact" matches.  *Kehm*, 724 F.3d at 625-26.  While it is likely that Kawasaki will be able to show that a myriad of factors affect motorcycle performance, Kawasaki will be given the opportunity to address the variety of circumstances that it contends are relevant to whether or not the complaints involved similar circumstances, and the extent to which such circumstances are not disclosed in the other consumer complaints, to rebut the force of the "other incidents" evidence.  *Id.*

It will then be up to the jury to decide what weight to give the "other incidents" evidence in this case. *Id.* Finally, as to Rule 403 considerations, the limited nature of the "other incidents" evidence in this case makes arguments about confusing the jurors and the potential for "mini-trials" far less persuasive than they might be in a case where plaintiffs in other similar actions are presented as witnesses to testify about the "other instances."

This motion in limine is also denied.

### 5. *Exclusion of causation opinions of the plaintiffs' expert*

Kawasaki's last pretrial motion is its Motion In Limine To Exclude Causation Opinions Of Plaintiffs' Expert, Mark Ezra (docket no. 97). The Thompsons also resist this motion.

### a. *Arguments of the parties*

Kawasaki argues that, regardless of whether the Thompsons' expert, Mr. Ezra, is qualified as an expert, he has no reliable scientific basis to support his opinion that a defect in the steering damper caused Scott Thompson's motorcycle accident. Therefore, Kawasaki argues, I should not permit Mr. Ezra to offer testimony concerning the cause of the accident, because his causation opinions are not reliable or reasonably based on the facts of this case. The central point of Kawasaki's challenge is that Mr. Ezra testified during his deposition that he would not offer an accident reconstruction opinion, and Kawasaki argues, for that reason alone, he should not be permitted to testify to specific causation. Instead, Kawasaki argues that Mr. Ezra has based his causation opinion on speculation and inaccurate assumptions. Kawasaki challenges Mr. Ezra's assumption about the speed at which Scott Thompson was traveling as contrary to Mr. Welter's testimony; his assertion that Scott Thompson hit a "gap" in the pavement, although nobody observed him hitting a "gap," and Mr. Ezra has not been able to identify where the purported "gap" in the road was; and his

assertion that Scott Thompson's motorcycle experienced front-wheel "wobble," based on Mr. Welter's testimony, notwithstanding that Mr. Welter did not know whether "wobble" is a technical motorcycle term. Similarly, Kawasaki argues that Mr. Ezra has made several incorrect assumptions about Scott Thompson's motorcycle, including that Kawasaki added the "steering damper" as an "essential component" to produce "safe, convergent weave mode and wobble mode stability," and that Kawasaki did so without conducting any testing, but testimony of Kawasaki's Rule 30(b)(6) representative shows that various tests were performed on the 2007 Ninja before it was distributed. Kawasaki also argues that Mr. Ezra should not be allowed to state an opinion that Scott Thompson's operation of the motorcycle was not a contributing factor.

The Thompsons argue, however, that it simply was not possible for Mr. Ezra—or anyone else—to do an accident reconstruction, because the investigating officers inadvertently disposed of the relevant measurement data taken at the scene of the accident, and remaining photographic and other evidence is not sufficient to provide a basis for a reconstruction. They also argue that Mr. Ezra is not required to do an accident reconstruction to offer a valid, reliable opinion about causation, as there was other evidence, including eyewitness testimony, concerning the resting points of Scott Thompson and the motorcycle, and certain marks on the roadway, which provided sufficient basis for a well-supported opinion that would be helpful to the trier of fact. They assert that Mr. Ezra will be able to explain from available information that the accident was consistent with an uncontrollable "wobble/weave" event. They also argue that Mr. Lachioma's and an investigating officer's testimony provide sufficient basis for Mr. Ezra's opinion that there was a "gap" in the roadway, that Scott Thompson hit such a "gap" or "crack" prior to the accident, and that such a "gap" could cause a "wobble" incident. They also argue that Mr. Ezra's opinions are not dependent upon

the specific speed at which Scott Thompson was traveling. Similarly, they argue that there is sufficient basis in the record for Mr. Ezra's opinions about how the accident could have been prevented, including the testimony of Kawasaki representatives, and why Scott Thompson did not contribute to the accident, based, for example, on the resting point of Scott Thompson and the motorcycle after Thompson was thrown from the motorcycle. The Thompsons also request that, before barring Mr. Ezra's causation opinions, the court hold a *Daubert* hearing.

In reply, Kawasaki argues that the Thompsons' attempts to bolster the reliability of Mr. Ezra's causation opinions are unavailing. Kawasaki argues that it is not enough for an expert to employ reliable scientific principles or methods, if those principles or methods are not tied to the facts of the case. Kawasaki then argues that Mr. Ezra's three categories of support—general laws of physics and engineering principles; witness testimony and facts related to the scene of the accident; and "extensive testing," including dynamometer measurements of various steering dampers and a test ride of a 2006 Ninja motorcycle with the two models of Ohlins steering dampers used in 2006 and 2007—are each flawed and not reliably connected to the facts of the case.

### b.     Analysis

Taking the last request in the Thompsons' resistance first, an evidentiary hearing is not required prior to a *Daubert* determination on expert evidence; rather, what is required is that the parties "have an adequate opportunity to be heard" before the court makes its decision. *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 761 n.3 (8th Cir. 2003). In this case, the short time between the Thompsons' request for a *Daubert* hearing and the trial and my crowded schedule have not permitted an "in limine hearing" prior to any *Daubert* determination concerning the scope of Mr. Ezra's opinions.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court explained that the district court must perform a "gatekeeper" function, under Rule 702 of the Federal Rules of Evidence, so that only expert testimony that is relevant and reliable is admitted. 509 U.S. at 589. Rule 702 provides that expert testimony should be admitted if [1] it is based on sufficient facts, [2] it "is the product of reliable principles and methods," and [3] "the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702; *see also General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The Eighth Circuit Court of Appeals has explained how the district court is to perform its "gatekeeper" function under *Daubert*, as follows:

> First, the trial court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." [*Daubert*, 509 U.S. at 592-93, 113 S.Ct. 2786, 125 L.Ed.2d 469]. The Court cautioned that the trial court must focus "on [the] principles and methodology, not on the conclusions that they generate." *Id*. at 595, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. Second, the court must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. *Id*. at 592, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Id*. at 591, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. The Court, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), clarified that the district court's gatekeeper function applies to all expert testimony, not just testimony based in science. *Id*. at 147, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238.

*Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003). However, "[a]s the Supreme Court emphasized in *Daubert*, 509 U.S. at 595-96, 113 S.Ct. 2786, 125

L.Ed.2d 469, 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *United States v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003).

In this case, my "preliminary assessment," from my review of the submissions in support of and resistance to Kawasaki's motion to exclude various opinions by Mr. Ezra, is that the reasoning and methodology underlying the challenged opinions are scientifically valid and that Mr. Ezra's reasoning and methodology can be applied to the facts in issue. *See Daubert*, 509 U.S. at 592-93 (first step in the court's "gatekeeper" function under Rule 702); *Kudabeck*, 338 F.3d at 860 (same). Although Kawasaki is clearly unhappy with Mr. Ezra's causation opinions, and has cloaked that unhappiness in challenges to "factual basis" and "reasoning and methodology," I find that the Thompsons have shown that Mr. Ezra's reasoning and methodology are appropriate, and apply proper scientific principles. Moreover, I find that his challenged opinions have an adequate factual basis, including the sources of data that the Thompsons have identified, such that submission of his opinions to a jury is warranted. I am also convinced that the proposed expert testimony is relevant and will aid the trier of fact. *Daubert*, 509 U.S. at 592 (second step in the analysis); *Kudabeck*, 338 F.3d at 860 (same). Plainly, Mr. Ezra's testimony will provide information beyond the common knowledge of the trier of fact regarding the circumstances that can—and he believes did in this case—cause "wobble" and the resulting accident. *See id.* at 591 (explaining that expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact).

Ultimately, I believe that to exclude Mr. Ezra's challenged opinions from this case would "invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence." *Vesey*, 338

F.3d at 916-17. This is a case in which vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are not only traditional, but appropriate means of attacking what Kawasaki contends is shaky causation opinions by Mr. Ezra. *Daubert*, 509 U.S. at 595-96; *Vesey*, 338 F.3d at 917.

Kawasaki's pretrial motion to exclude causation opinions of Mr. Ezra is denied.

### C.     *The Thompsons' Motion To Exclude Evidence*

On January 24, 2013, the Thompsons filed their own pretrial motion, a Motion In Limine (docket no. 96), challenging eleven categories of evidence. Somewhat more specifically, the categories of evidence that the Thompsons challenge are the following: (1) evidence of or argument about an alleged lack of other claims, lawsuits, and motorcycle "wobble/weave" incidents; (2) evidence or testimony that Scott Thompson caused his own death or that he failed to mitigate his damages; (3) evidence or testimony of alleged alcohol use by Scott Thompson on the day of the accident; (4) evidence of opinions of police officers and emergency personnel as to the cause of or contributing factors to the accident or other accident reconstruction opinions; (5) evidence of or argument about the posted 55 mph speed limit and that Scott Thompson violated Iowa law by allegedly traveling in excess of the 55 mph speed limit at the time of the motorcycle accident; (6) evidence regarding compliance with or the absence of minimum Federal Motor Vehicle Safety Standards; (7) evidence concerning the subject motorcycle or subject steering damper being manufactured and/or designed to the "state of the art"; (8) evidence or testimony referring to or concerning any of defendants' "good acts"; (9) evidence of collateral source benefits; (10) evidence of or reference to any previous pleadings; and (11) evidence of or reference to any previous adverse *Daubert* rulings concerning the Thompsons' expert witnesses. Kawasaki

disputes the inadmissibility of some of these categories of evidence, but represents that it will not offer evidence in other categories.

### 1.    Evidence no longer in dispute

In its February 11, 2013, Response And Opposition To Plaintiffs' Motion In Limine (docket no. 100), Kawasaki represents that it does not intend to introduce evidence in category (3), that Scott Thompson consumed alcohol on the day of the accident; evidence in category (7), concerning a "state of the art" defense; evidence in category (8), concerning "good acts" performed by Kawasaki; or evidence in category (10), involving previous pleadings in this matter. The portions of the Thompsons' Motion In Limine concerning these categories of evidence are denied as moot.

### 2.    Evidence still in dispute

#### a.    Evidence of the lack of other claims and "wobble/weave" incidents

##### i.    Arguments of the parties

The Thompsons anticipate that Kawasaki may attempt to claim that there are no or a low number of other claims and lawsuits involving the 2007 Ninja ZX-10R equipped with the OEM Ohlins steering damper and, therefore, the subject motorcycle cannot be defective. They assert that this kind of "negative inference" evidence should be excluded as irrelevant, lacking proper foundation, and unfairly prejudicial. They also request that any attempts to lay the necessary foundation be made outside the presence of the jury.

Kawasaki argues that the fact that there is no evidence of any other incidents substantially similar to the accident at issue here is plainly relevant to the Thompsons' design defect claim, and, indeed, that the absence of similar incidents, where thousands of other people have used the same product with the same design, disproves both the

presence of a defect and causation. Kawasaki argues that it can meet the foundational requirements for evidence demonstrating the lack of substantially similar incidents.

### ii. Analysis

Although the Eighth Circuit Court of Appeals does not appear to have established standards for the admissibility of such "lack of similar incidents" evidence, as both parties point out, the Third Circuit Court of Appeals considered the issue extensively in *Forrest v. Beloit Corp.*, 424 F.3d 344 (3d Cir. 2005). In *Forrest*, the court observed,

> There is little doubt that as a general matter evidence concerning the absence of prior accidents can satisfy the relevance threshold established by Rule 402. Courts have indicated that such evidence may be relevant to show (1) the absence of the alleged defect; (2) the lack of a causal relationship between the injury and the defect or condition charged; and (3) the nonexistence of an unduly dangerous situation.

*Forrest*, 424 F.3d at 356 (citing cases). That court also observed,

> [M]ost courts admitting evidence of the absence of prior accidents in product liability cases have done so only where the testifying witness, usually an employee of the product manufacturer, has testified that (a) a significant number of substantially identical products have been used in similar circumstances over a period of time; (b) the witness would likely be aware of prior accidents involving these products; and (c) to the witness's knowledge, no such prior accidents have occurred.

*Forrest*, 424 F.3d at 355-56 (citing cases). In *Forrest*, the court emphasized the importance of the foundational requirements for such evidence, in light of the potential for prejudice from such evidence, explaining,

> First, the mere fact that a witness does not know of any prior accidents does not prove that no such accidents

48

occurred.   Second, generalized assertions concerning an alleged absence of accidents over an extended period of time can be directly rebutted only with specific evidence of prior occurrences, but such evidence may be difficult or impossible for a plaintiff to obtain in cases where the defendant has not kept records concerning the safety history of its products.   Third, the absence of prior accidents may simply mean that the plaintiff was the first to be injured; there is always a first victim.   Fourth, testimony concerning the absence of prior accidents does not tell us how many near-accidents, nor how many fortuitous escapes from injury, may have occurred.

*Forrest*, 424 F.3d at 357 (internal quotation marks and citations omitted).

With these issues in mind, the court in *Forrest* summarized the "applicable analytical framework" for the admissibility of evidence concerning an absence of prior accidents, a question governed by federal law, as follows:

The admissibility of such evidence turns on the facts and circumstances of each case. Testimony concerning an alleged absence of prior accidents will usually satisfy the relevance threshold established by Rule 402. Such testimony, however, by its very nature, raises significant concerns regarding unfair prejudice to the plaintiff. . . . District courts are required under Rule 403 to balance the probative value of such evidence against its likely prejudicial effect, but the evidence may not be excluded unless the unfair prejudice created by admitting the evidence would substantially outweigh its probative value. In an effort to ascertain probative value and minimize undue prejudice, other courts considering such evidence have consistently insisted that the offering party lay a proper foundation. In most cases the required foundation has involved three elements: (a) *similarity*—the defendant must show that the proffered testimony relates to substantially identical products used in similar circumstances; (b) *breadth*—the defendant must provide the court with information concerning the number of prior units sold and the extent of prior use; and

          (c) *awareness*—the defendant must show that it would likely
          have known of prior accidents had they occurred.

*Forrest*, 424 F.3d at 358 (emphasis in the original).

Here, I do not believe that the "breadth" foundational requirement is seriously in dispute, in light of the thousands of 2007 Ninja motorcycles sold. *Id.* As to the "similarity" foundational requirement, *id.*, I have previously denied Kawasaki's motion to exclude evidence of allegedly similar incidents, on the ground that Kawasaki's objections to that evidence—that the incidents disclosed in warranty claims were not shown to be sufficiently similar—went more to the weight of the evidence than to its admissibility. *See, supra*, p. 40. It is clear that the "similarity" of any prior incidents is, once again, a fighting issue for Kawasaki's "lack of similar incidents" evidence. To the extent that Kawasaki can demonstrate that there are no "similar incidents," based on consideration of the various factors that Kawasaki has alleged can affect motorcycle performance and the "similarity" of incidents, Kawasaki will have met the "similarity" foundational requirement for its "lack of similar incidents" evidence and argument.

The issue of "awareness," *Forrest*, 424 F.3d at 358, is the centerpiece of the Thompsons' "prejudice" argument, *see id.* at 357-58 (explaining "prejudice" concerns from such evidence). The Thompsons argue that a "lack of similar incidents" argument *is* unfairly prejudicial, for the reasons identified in *Forrest* as demonstrating the *potential* for such prejudice, *id.* at 357, including a concern about the necessity of mini-trials over collateral issues. However, this concern did not trouble the Thompsons as to their attempt to introduce evidence that they argued *shows* that there *are* "substantially similar" incidents. Also, as I noted above, the "other incidents" evidence that the Thompsons intend to present is so limited in this case that a "confusion" or "mini-trials" argument is not persuasive. In this case, the Thompsons' argument that Kawasaki will not be able to meet the "awareness" foundational requirement by

demonstrating, reliably, that it would have had notice of accidents or claims, like Kawasaki's argument about the extent to which incidents identified by the Thompsons really are "substantially similar," ultimately goes to the *weight* of any evidence of the "lack of similar incidents," at least where I conclude that Kawasaki has made the threshold foundational showing of sufficient "awareness" to permit admission of the evidence.

This part of the Thompsons' Motion In Limine is denied.

### b. Evidence that Scott Thompson caused his death or failed to mitigate his damages

### i. Arguments of the parties

Next, the Thompsons seek to exclude evidence or testimony that Scott Thompson caused his own death or that he failed to mitigate his damages. They argue that Kawasaki cannot meet the foundational requirements for failure-to-mitigate-damages or causation evidence, but, if Kawasaki is allowed the chance to try to do so, it should be outside the presence of the jury. They argue that, because Scott Thompson's death was caused by pulmonary embolism and deep vein thrombosis, which are foreseeable complications to his spinal cord injury and paralysis sustained in the motorcycle accident, Kawasaki is liable for damages resulting from his death, if the jury determines that the motorcycle was defectively designed. They also argue that Kawasaki cannot show through substantial evidence that Scott Thompson acted unreasonably or that any unreasonable acts caused his death or specific damages. Somewhat more specifically, they assert that Kawasaki may attempt to argue that Scott Thompson chose not to follow some treatment recommendations that could have lessened his injuries (for example, by avoiding bed sores), choosing instead more conservative treatment, but that Kawasaki cannot demonstrate that such alleged failure to comply with those treatment recommendations was unreasonable for a similarly-situated spinal cord injury patient.

In response, Kawasaki represents that it does not intend to argue at trial that Scott Thompson caused his own death or failed to mitigate his damages, although it does dispute that its allegedly defective product was the cause of Scott Thompson's death and reserves the right to present relevant evidence related to the cause of Scott Thompson's death. Kawasaki also argues that the reasonableness of Scott Thompson's medical care and treatment following his motorcycle accident, as well as the ultimate cause of his death, are factual questions that must be decided by the jury. Kawasaki cites no authority in support of its contentions, however.

## ii.    Analysis

Kawasaki's representation that it does not intend to argue at trial that Scott Thompson caused his own death or failed to mitigate his damages is confusing, in light of Kawasaki's reservation of its right to contest causation and its assertion that the reasonableness of Scott Thompson's medical care and treatment following his motorcycle accident, as well as the ultimate cause of his death, are questions for the jury. What I understand Kawasaki to assert is that it should be allowed to argue and present evidence that Scott Thompsons' *medical treatment*, rather than his *refusal* to pursue certain treatment, was a proximate cause or an intervening, superseding cause of his death,[8] which is an issue that I conclude is outside the scope of this part of the Thompsons' motion. Thus, it appears that Kawasaki has represented that it does not intend to offer the evidence that the Thompsons are challenging in this part of their motion. Under these circumstances, this part of the Thompsons' motion is denied as moot.

---

[8] I recently discussed the admissibility and relevance of evidence concerning the fault of medical providers or the inadequacy of medical care given to a tort victim on the issue of causation under Iowa law in *Lee v. Small*, 829 F. Supp. 2d 728, 746-51 (N.D. Iowa 2011).

### c. Evidence of emergency responders' opinions about causation

#### i. Arguments of the parties

The next category of evidence in the Thompsons' Motion In Limine still at issue is evidence of opinions of police officers and emergency personnel as to the cause of or contributing factors to the accident or other accident reconstruction opinions. They anticipate that certain police officers or emergency personnel may attempt to provide opinion testimony with respect to the cause or contributing factors causing the accident, the speed of the motorcycle, or other "accident reconstruction" opinions. They assert that such opinions of the police officers are also contained in the accident report. However, the Thompsons argue that such witnesses are not qualified to offer such opinions and that allowing them to do so will only confuse and mislead the jury. The Thompsons hasten to explain that this part of their motion is not intended to prevent testimony by such witnesses as to their firsthand knowledge and observations at the accident scene, only to exclude any "expert" testimony from such witnesses.

Kawasaki argues that such witnesses may offer "lay" opinions, based on their own perceptions and knowledge. Kawasaki states that it intends to offer "accident reconstruction opinions" from the investigating officers and emergency personnel only to the extent that they are rationally based upon those witnesses' knowledge and observations at the accident scene. For example, Kawasaki argues, Lieutenant Jeff TeBrink should be permitted to testify about his opinion, based on his 21 years of experience investigating motorcycle accidents, that the dark line on the road at the accident scene was a motorcycle skid mark, because such an observation and opinion will help the jury consider the circumstances surrounding and the cause of Scott Thompson's motorcycle accident.

### *ii.* *Analysis*

This part of the Thompsons' Motion In Limine invokes the same principles as Kawasaki's motion to exclude lay opinions of Mr. Lachioma. *See, supra*, p. 19*ff.* However, the Thompsons have not specifically identified the lay opinions that they intend to exclude. Under the circumstances, before hearing the evidence actually at issue, I can do little more than observe that emergency responders can testify only about things that they did, in fact, observe for themselves about the scene of the accident (such as the presence and nature of marks on the road surface on which the accident occurred) and, to the extent that they offer any opinions, such opinions must be based only on such personal observations and personal experience. *See Faulkner*, 636 F.3d at 1018 (the basis for lay opinions must be personal knowledge or perceptions); *Smith*, 591 F.3d at 982 (expressly stating that this is the *limit* of a lay witness's admissible opinion). They will not be permitted to stray into opinions based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." *See Smith*, 591 F.3d at 982-83.[9]

---

[9] The only specific example I have before me is Kawasaki's example of testimony of Lieutenant Jeff TeBrink about his opinion, based on his 21 years of experience investigating motorcycle accidents, that the dark line on the road at the accident scene was a motorcycle skid mark. Lieutenant TeBrink can testify to his personal observations at the accident scene and the conclusion he draws from those observations. To the extent that he can testify that he has observed road marks made by tires and road marks made by skidding a leather-clad rider across the road surface, he may testify to his belief that the black marks found on the road after Scott Thompson's accident appeared to him to be caused by skidding tires. He cannot, however, bolster such opinions by asserting that his 21 years of experience have given him "specialized knowledge" of the causes of motorcycle accidents or skid marks. *Compare* FED. R. EVID. 701 (stating that lay opinions are admissible so long as they are "rationally based on the perception of the witness"); *Faulkner*, 636 F.3d at 1018 (same), *with* FED. R. EVID. 702 (stating standards for expert opinions, based on "scientific, technical, or other specialized knowledge"); *Smith*, 591 F.3d at 982-83

Because of the lack of specificity of this part of the Thompsons' Motion In Limine, it is denied without prejudice. Specific challenges to testimony and lay opinions of emergency responders will have to be raised at trial.

### d. Evidence that Scott Thompson was speeding

### i. Arguments of the parties

The Thompsons also seek to exclude evidence of or argument about the posted 55 mph speed limit and that Scott Thompson violated Iowa law by allegedly traveling in excess of the 55 mph speed limit at the time of the motorcycle accident and, consequently, that he was at fault for the accident. They contend that there is no foundation for any witness's opinion about the speed that Scott Thompson was traveling—at most, they contend, Mr. Welter "guessed" about the speed that Scott Thompson was traveling—and Scott Thompson was never cited or prosecuted for speeding at the time of the accident. The Thompsons also argue that any testimony about the posted speed limit will improperly permit jurors to infer that Scott Thompson violated the speed limit, which would be unfairly prejudicial. The Thompsons also argue that the speed at which Scott Thompson was traveling is irrelevant, where there is no evidence that his speed was a cause of or contributing factor to the accident. They also argue that the 2007 Ninja motorcycle is purportedly designed to travel at "racing" speeds.

Kawasaki argues that both the posted speed limit and Scott Thompson's actual speed are relevant to the cause of the accident, so that testimony about both is admissible. Kawasaki contends that both the posted speed limit and Scott Thompson's

---

(explaining that lay opinions cannot be based on "scientific, technical, or other specialized knowledge" within the scope of Rule 702). I will not allow Kawasaki to present "backdoor" expert opinions from Lieutenant TeBrink any more than I will allow the Thompsons to present "backdoor" expert opinions from Mr. Lachioma.

actual speed are *facts* about the circumstances of the accident, which may be the subject of personal knowledge testimony, and that "estimated speed" is a "quintessential" example of a Rule 701 lay opinion. Kawasaki argues that, contrary to the Thompsons' assertions, this evidence would not confuse the jury, but would assist the jury in determining material facts at issue in this case, so that it should be admitted at trial.

### ii.     Analysis

In *Baker v. Bower*, 487 N.W.2d 86 (Iowa Ct. App. 1991), the Iowa Court of Appeals held that the trial court should have submitted to the jury the question of whether the plaintiff motorcyclist was traveling over the speed limit at the time of a two-vehicle accident as relevant to his contributory or comparative fault in the accident, where there was conflicting testimony on speed, braking, and skid marks to create a fact question. *Baker*, 487 N.W.2d at 88. This decision suggests the relevance of evidence of the plaintiff's "speed," at least in a negligence case. The decision of the Third Circuit Court of Appeals in *Acosta v. Honda Motor Co., Ltd.*, 717 F.2d 828 (3d Cir. 1983), likewise suggests the relevance of evidence that the plaintiff was driving a motorcycle in excess of the speed limit at the time of the accident in a strict liability "design defect" case pursuant to RESTATEMENT (SECOND) OF TORTS § 402A. *See Acosta*, 717 F.2d at 842. In *Acosta*, the question was whether the jury failed to find the plaintiff at fault, because they excused his violation of the speed limit, or because they could have resolved the fact question of the plaintiff's speed by reasonably finding from the evidence that the plaintiff was not speeding at all. *Id.* The Tenth Circuit Court of Appeals has concluded that, where a lay opinion about the speed of a vehicle at the time of an accident is rationally based on the witness's perception, a district court does not abuse its discretion in admitting such an opinion pursuant to Rule 701. *See Gust v. Jones*, 162 F.3d 587, 595 (3d Cir. 1998).

The parties here have pointed to evidence, in both the summary judgment record and in the record developed in relation to the pretrial evidentiary motions, that there is a relationship between "wobble" and the speed of the motorcycle—for example, the Thompsons asserted that some of the "other incidents" evidence that they wished to present was "substantially similar," because it involved complaints about the lack of steering dampening in the 2007 Ninja motorcycle when traveling over 50 mph. Thus, the speed at which Scott Thompson was traveling at the time of the accident is relevant in this "design defect" case. *Cf. Acosta*, 717 F.2d at 842. Not only is the speed at which Scott Thompson was traveling relevant, but the fact that his speed was in excess of the posted limit is relevant to the issue of comparative fault. *Id.*; *Baker*, 487 N.W.2d at 88. I find that there is also sufficient basis in the evidence to present a jury question, based on lay opinions, about the speed at which Scott Thompson was traveling, for example, from the testimony of Mr. Welter, whom Scott Thompson had passed just shortly before he lost control of the motorcycle. *Cf. Gust*, 162 F.3d at 595. I also do not find the Thompsons' "prejudice" arguments to be persuasive, because evidence that Scott Thompson was traveling in excess of the speed limit—a moving vehicle infraction of which nearly everyone is guilty at one time or another—simply is not "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *Adams*, 401 F.3d at 900 (quoting *Shoffner*, 71 F.3d at 1433).

This portion of the Thompsons' Motion In Limine is denied.

### e.      *Compliance with or absence of safety standards*

### i.      *Argument of the parties*

Next, the Thompsons seek to exclude evidence regarding compliance with or the absence of minimum Federal Motor Vehicle Safety Standards (FMVSSs). They argue that only certain FMVSS minimum standards apply to motorcycles; that there is no standard for motorcycle stability, kickback, head shake, or wobble/weave mode

stability; the performance of the 2007 Ninja ZX-10R for wobble/weave mode stability (kickback or head shake) is the defect at issue in this case; and, because there is no applicable FMVSS for this matter, "compliance" with "all" FMVSSs does not tend to prove or disprove any disputed issue with regard to motorcycle stability. They contend that allowing Kawasaki to submit such evidence is likely to confuse or mislead the jury. Indeed, they argue that the statute under which the FMVSSs were promulgated expressly states that compliance with such a "minimum standard" "does not exempt a person from liability at common law," citing 49 U.S.C. § 30103(e).

Kawasaki argues, however, that evidence of its compliance with applicable FMVSSs is relevant and admissible in this case. Kawasaki argues that, while only certain FMVSSs apply to motorcycles, and none of those FMVSSs govern motorcycle stability, its compliance with general industry design and safety standards is probative of whether Kawasaki complied with industry standards in its design of the steering damper at issue here. Kawasaki argues that, notwithstanding the purported disclaimer of an exemption from liability based on compliance with the standards in the statute, this evidence is not unfairly prejudicial under the "high standard" exclusion of probative evidence. Kawasaki argues that the scope of the FMVSSs and Kawasaki's compliance with those standards can be adequately explained at trial.

### ii.    *Analysis*

I believe that Kawasaki is trying to do something very like what the statute under which the FMVSSs were promulgated would not allow: assert that compliance with general FMVSSs should somehow exempt Kawasaki from a "design defect" claim. *See* 49 U.S.C. § 30103(e) ("Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law."). Kawasaki's attempt to do so is even more improper, where the parties agree that there is no FMVSS applicable to motorcycle stability, which is the "design defect" at issue in

58

this case. To put it another way, the fact that there was no FMVSS regarding motorcycle stability with which Kawasaki had to comply, and that Kawaski complied with FMVSSs that had nothing to do with motorcycle stability, sheds no light whatsoever on whether the motorcycle's design was defective with regard to stability. *See* FED. R. EVID. 401. I also agree with the Thompsons that it would be misleading or confusing to the jury to interject compliance with FMVSSs that do not relate to the issue of motorcycle stability, and that doing so would invite a "mini-trial" over the scope of the FMVSSs and the meaning of compliance with such standards that ultimately is a complete distraction from the issues in this case and a waste of time. FED. R. EVID. 403 (relevant evidence may be excluded because of its tendency to confuse the issues, mislead the jury, or cause undue delay and waste of time).

This portion of the Thompsons' Motion In Limine is granted.

### f.     *Evidence of collateral source benefits*

### i.     *Arguments of the parties*

The penultimate category of evidence that the Thompsons seek to exclude is evidence of collateral source benefits. The Thompsons assert that evidence that plaintiffs have or are entitled to receive benefits from any collateral source, including but not limited to, medical insurance, life insurance, automobile insurance, or government benefits, is irrelevant and inadmissible under Iowa's collateral source rule. They acknowledge that medical insurance payments may be admissible as to the reasonable value of services received, but that any mention of insurance or collateral source payments should be excluded, to prevent reduction of their recovery by amounts paid by the collateral source. Kawasaki responds that it has no intention of referring to inadmissible collateral source evidence at trial, but reserves the right to offer evidence of payments made in accordance with Iowa law.

*ii.      Analysis*

In *Lee v. Small*, 829 F. Supp. 2d 728 (N.D. Iowa 2011), I discussed, in some detail, the limitations and proper uses of "collateral source" payments, such as medical insurance payments, under Iowa law.    *See Lee*, 829 F. Supp. 2d at 742-46.    I concluded that, under IOWA CODE § 668.14(1) and *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150 (Iowa 2004), "[t]he value of medical services can be shown by evidence of the amount paid for such services," for example, by medical insurance, *id.* at 744 (quoting *Pexa*, 686 N.W.2d at 156), but a plaintiff's "recovery for medical expenses does not turn, alone, on either the amount that he was billed for medical care or the amount that has been paid by his insurance . . . , it turns on 'the reasonable and necessary costs of medical care.'"    *Id.* at 744-45 (quoting *Pexa*, 686 N.W.2d at 156). In short, if supported by proper evidence of "reasonableness," a plaintiff may recover more than the amount actually paid by his insurance, but evidence of the amount actually paid by insurance will not be excluded.    *Id.* at 745.    Thus, the challenged evidence is admissible to the extent that it shows the value of services.    To the extent that the Thompsons assert that evidence that is admissible pursuant to IOWA CODE § 668.14(1) and *Pexa* should nevertheless be excluded pursuant to the "collateral source rule," presumably because it is too prejudicial to be admitted, I reject that argument. Any potential prejudice from such evidence can be mitigated by a limiting instruction stating the proper uses of such evidence and the fact that, notwithstanding payment from a collateral source, the plaintiffs are entitled to recover the entire amount of their damages for reasonable and necessary medical care.    *See, e.g, Cowling*, 648 F.3d at 699 ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted.").

This part of the Thompsons' Motion In Limine is denied.

### g. *Evidence of adverse* **Daubert** *rulings*

#### i. *Arguments of the parties*

The final category of evidence that the Thompsons seek to exclude is evidence of or reference to any previous adverse *Daubert* rulings concerning their expert witnesses. The Thompsons contend that any such previous adverse *Daubert* rulings against their experts are not relevant and would confuse the issues, mislead the jury, and result in mini-trials causing undue delay and a waste of time. More specifically, they argue that any evidence of or reference to prior adverse *Daubert* rulings against their expert witnesses would require mini-trials concerning the facts of the prior cases, the judge's rulings, and the reasons for the judge's rulings in the prior cases. Any marginal probative value of such evidence, they contend, is outweighed by its likelihood to confuse the issues and waste time.

Kawasaki argues that the credibility of expert witnesses is a proper question for the jury. Kawasaki argues that whether an expert has previously given expert testimony, how much the expert was paid for that testimony, and whether the expert testified on behalf of plaintiffs or defendants are all common, relevant inquiries made by counsel to aid the jury in assessing the witness's credibility. Similarly, Kawasaki argues, a prior court's determination that that an expert was unqualified or unreliable to testify may be relevant to the expert's credibility and admissible as impeachment evidence. Far from being irrelevant, Kawasaki contends, evidence that any of the Thompsons' experts have previously been prevented from testifying at trial goes directly to the credibility of those experts.

#### ii. *Analysis*

To the extent that Kasasaki contends that my ruling in *Kuiper v. Givaudan, Inc.*, 602 F. Supp. 2d 1036, 1050-52 (N.D. Iowa 2009), stands for the proposition that an expert may be impeached with negative *Daubert* rulings in other cases, Kawasaki is

mistaken. No prior negative *Daubert* ruling had been leveled against the expert in *Kuiper*; rather, the expert had twice been sanctioned in prior cases, once of "contemptuous behavior," and once for "knowingly, deliberately, intentionally and willfully" violating a previous order of a court prohibiting certain extrajudicial statements. *Kuiper*, 602 F.3d at 1050. Moreover, the question was not whether those prior sanctions rulings could be used against the expert during trial, but whether the prior sanctions demonstrated that he was not qualified to give objective expert testimony, because he had a personal agenda. *Id*. at 1050-52. Although I stated that the expert's "checkered past gives the court some pause," I could not ignore that he was properly qualified to testify as an expert in the case. *Id*. My prior ruling in *Kuiper* is completely inapposite on the issue raised in this case.

Kawasaki cites *Scordill v. Louisville Ladder Group, L.L.C.*, No. Civ.A. 02–2565, 2004 WL 307475, *12 (E.D. La. Feb. 17, 2004), in support of its argument. In that case, the district court concluded, with no analysis whatsoever, that "[u]se of the previous exclusion of an expert's testimony is permissible to impeach the credibility and credentials of the expert." *Id*. I find nothing about such a decision convincing. Furthermore, I have already denied Kawasaki's pretrial motion to exclude Mr. Ezra's testimony on *Daubert* grounds. An attempt to present a *Daubert* ruling of another court regarding Mr. Ezra would be an attempt to circumvent my role as the "gatekeeper" *in this case* by asking the jurors to substitute for mine the judgment *of another court, in another case,* about whether or not an expert is qualified. Also, allowing such evidence would, inevitably, result in delay, while the parties conduct a "mini-trial" over the issues on which a party in a previous case sought to qualify Mr. Ezra as an expert, the extent to which he was offered as an expert on the same or different issues in this case and the previous case, any differences in his methodology or reasoning between this case and the previous case, and the precise scope and rationale for the previous court's

exclusion. FED. R. EVID. 403 (relevant evidence may be excluded because of its tendency to confuse the issues, mislead the jury, or cause undue delay and waste of time). Finally, as I noted, above, "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Vesey*, 338 F.3d at 917 (quoting *Daubert*, 509 U.S. at 595-96). However, nothing about this principle suggests that "vigorous cross-examination" includes impeachment with a prior court's exclusion of the witness pursuant to the *Daubert* standards. Rather, it means that Kawasaki is free to cross-examine, vigorously, Mr. Ezra's opinions *in this case*, based on his reasoning, methodology, and the facts and assumptions on which he relied *in this case*.

This part of the Thompsons' Motion In Limine is granted.

### III.    CONCLUSION

Upon the foregoing,

1.    Defendant Kawasaki's January 24, 2013, Joint Motion In Limine [ ] To Exclude Hearsay Statements And Lay Opinion Testimony Of David Lachioma (docket no. 89), filed jointly with former defendant Ohlins, is **granted in part and denied in part**, as follows:

    a.    That part of the Motion seeking to exclude Mr. Lachioma's testimony about what Mr. Welter said about the motorcycle accident is **denied without prejudice** to reassertion, if the evidence at trial demonstrates that the circumstances in which the allegedly "excited utterance" was made were not what they appear to be on the present record;

    b.    That part of the Motion seeking to exclude testimony by Mr. Lachioma about how the accident occurred is **granted** to the extent that

Mr. Lachioma's testimony about Scott Thompson's accident must be rationally based on his perception, not on scientific, technical, or other specialized knowledge; and

        c.      That part of the Motion seeking to exclude testimony about Mr. Lachioma's recollections of statements on internet fora or in any other "enthusiast publications" related to motorcycles is **denied**, although I will give an appropriate limiting instruction at the time that such evidence is offered, if Kawasaki so requests.

2.      Ruling is **reserved** on Defendant Kawasaki's January 24, 2013, Joint Motion In Limine [ ] To Exclude Hearsay Testimony Of Randy Thompson (docket no. 90), filed jointly with former defendant Ohlins, until I can determine the "trustworthiness" of the testimony, within the meaning of Rule 807, for example, in proceedings during trial outside the presence of the jury.

3.      Defendant Kawasaki's January 24, 2013, Motion To Bifurcate Punitive Damages From General Liability And To Exclude All References To Punitive Damages Issues During The Compensatory Damages Phase Of The Trial (docket no. 92) is **denied**.

4.      Defendant Kawasaki's January 24, 2013, Motion In Limine To Preclude Introduction Of Other Similar Incidents At Trial (docket no. 94) is **denied**.

5.      Defendant Kawasaki's January 24, 2013, Motion In Limine To Exclude Causation Opinions Of Plaintiffs' Expert, Mark Ezra (docket no. 97) is **denied**.

6.      Former defendant Ohlins's January 24, 2013, Motion In Limine (docket no. 93) is **denied as moot**, where Ohlins has been dismissed from this action and no other party has expressly joined in the motion.

7.     Former defendant Ohlins's January 24, 2013, sealed Motion In Limine To Exclude Expert Testimony (docket no. 95) is also **denied as moot**, where Ohlins has been dismissed from this action and no other party has expressly joined in the motion.

8.     The Thompsons' January 24, 2013, Motion In Limine (docket no. 96) is **granted in part and denied in part**, as follows:

a.     The Motion is **denied as moot** as to the following categories of evidence, based on Kawasaki's representations that it does not intend to offer evidence in these categories:   Category (3), evidence that Scott Thompson consumed alcohol on the day of the accident; category (7), evidence concerning a "state of the art" defense; category (8), evidence concerning "good acts" performed by Kawasaki; and category (10), evidence involving previous pleadings in this matter;

b.     That part of the Motion seeking to exclude evidence or argument that there are no or a low number of other claims and lawsuits involving the 2007 Ninja ZX-10R equipped with the OEM Ohlins steering damper and, therefore, that the subject motorcycle cannot be defective, is **denied**;

c.     That part of the Motion seeking to exclude evidence or testimony that Scott Thompson caused his own death or that he failed to mitigate his damages is **denied as moot**;

d.     That part of the Motion seeking to exclude evidence of opinions of police officers and emergency personnel as to the cause of or contributing factors to the accident or other accident reconstruction opinions is **denied without prejudice**, so that specific challenges to testimony and lay opinions of emergency responders will have to be raised at trial;

e.     That part of the Motion seeking to exclude evidence of or argument about the posted 55 mph speed limit, that Scott Thompson violated Iowa law by

allegedly traveling in excess of the 55 mph speed limit at the time of the motorcycle accident, and that he was, consequently, at fault for the accident is **denied**;

       f.      That part of the Motion seeking to exclude evidence regarding compliance with or the absence of minimum Federal Motor Vehicle Safety Standards (FMVSS) is **granted**;

       g.      That part of the Motion seeking to exclude evidence of collateral source benefits is **denied**, although I will give a limiting instruction stating the proper uses of such evidence and the fact that, notwithstanding payment from a collateral source, the plaintiffs are entitled to recover the entire amount of their damages for reasonable and necessary medical care, if the plaintiffs request it; and

       h.      That part of the Motion seeking to exclude evidence of or reference to any previous adverse *Daubert* rulings concerning the plaintiffs' expert witnesses is **granted**.

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about challenged evidence, this ruling shall be sealed until ten days after completion of the trial or notice of any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

       **IT IS SO ORDERED**.

       **DATED** this 25th day of February, 2013.



MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA